UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| STEVEN PRAKEL, <br> CAROLYN PRAKEL, <br>                 Plaintiffs, <br><br>                 vs. <br><br> THE STATE OF INDIANA, <br> BRENT E. DICKSON, Acting Chief Justice, <br> INDIANA SUPREME COURT, Division of State Court Administration, <br> KIMBERLY A. SCHMALTZ, Magistrate Judge, <br> JAMES D. HUMPHREY, Judge, <br> JONATHAN N. CLEARY, Judge, <br>                 Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | 4:12-cv-45-SEB-WGH |

**ENTRY ON DEFENDANTS' MOTION FOR PROTECTIVE ORDER**

Plaintiffs, Steven and Carolyn Prakel, accuse Defendants, State of Indiana, Acting Chief Justice Brent E. Dickson, Indiana Supreme Court Division of State Court Administration ("the Division") (collectively, "State Defendants"), Magistrate Judge Kimberly A. Schmaltz, and Judges James D. Humphrey and Jonathan N. Cleary, of violating Subchapter II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.* ("Title II"), and section 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("section 504"), by failing to provide interpreter services for Mr. Prakel—an interested spectator—during hearings for Ms. Prakel's criminal case in the Dearborn County Superior and Circuit Courts (collectively, "Dearborn Courts"). Plaintiffs now seek to depose

the Dearborn Courts judges and former Chief Justice Randall Shepard,[1] and have sent a wide-ranging deposition notice under Federal Rule of Civil Procedure 30(b)(6). (Defendants' Brief 2-3). Defendants now seek a protective order to bar Plaintiffs from taking the depositions. (Docket No. 40). For the reasons set forth below, Defendants' motion is **GRANTED in part** and **DENIED in part**.

I.    **Factual Background**

These facts are considered as true for purposes of this motion. In April 2010, Mr. Prakel, who is hearing-impaired, contacted Dearborn County Superior Court #1 ("Superior 1") to request sign language interpreter services for hearings in which Ms. Prakel, his mother, was a party. (Complaint ¶¶ 19-20). Mr. Prakel attended Ms. Prakel's hearing in Superior 1 before Judge Cleary in April 2010, but there was no sign language interpreter provided. (*Id.* ¶¶ 21-22). In May 2010, Mr. Prakel again requested interpreter services for Ms. Prakel's upcoming hearing before Judge Cleary. A hearing was set for June 23, 2010, to determine whether Superior 1 would provide interpreter services. However, no interpreter was present at that June 2010 hearing. (*Id.* ¶¶ 23, 25-27). The clerk's office for Superior 1 refused to communicate with Mr. Prakel in writing. (*Id.* ¶ 28). In April 2011, Mr. Prakel again asked for interpreter services for Ms. Prakel's hearing in Superior 1. Superior 1 refused

---

[1] Defendants claim that the deposition notice requested depositions of "all four of the judicial Defendants" (Defendants' Brief 2), which would presumably include Chief Justice Dickson and exclude former Chief Justice Shepard. Since Plaintiffs are the non-moving party, and the parties agree that the former Chief Justice received notice of Plaintiffs' reimbursement request, the court analyzes Defendants' motion as though Plaintiffs seek to depose former Chief Justice Shepard.

to accept Mr. Prakel's relay call and did not provide an interpreter for the April 2011 hearing. (*Id.* ¶¶ 32-34).

In May 2010, in advance of Ms. Prakel's hearings in Dearborn County Circuit Court, Mr. Prakel called the chambers of Magistrate Judge Schmaltz, who informed Mr. Prakel that Circuit Court did not provide interpreters for spectators. (*Id.* ¶ 36-37). Ms. Prakel paid for interpreter services for her May 2010 hearing before Magistrate Judge Schmaltz and her July 2010 Circuit Court hearings before Judge Humphrey. (*Id.* ¶¶ 40-42).

The National Association of the Deaf ("NAD") sent a letter to Judge Humphrey requesting reimbursement for the interpreter services paid for by Ms. Prakel. Judge Humphrey and the Circuit Court did not respond. (*Id.* ¶¶ 43-46). The NAD sent a similar request to then-Chief Justice of the Indiana Supreme Court Randall T. Shepard, who also did not respond. (*Id.* ¶ 47-48). Plaintiffs subsequently filed this suit, alleging that Defendants had deprived Mr. Prakel of equal opportunity to participate in the programs and activities of the Dearborn Circuit Court and Superior 1, which are public entities under both Title II and section 504. Plaintiffs sought reimbursement for Ms. Prakel's expenditures on interpreter services, compensatory damages, and attorney fees.

On April 26, 2013, Plaintiffs filed a motion to compel discovery (Docket No. 46), to which Defendants did not timely respond. On May 21, 2013, the court granted Plaintiffs' motion in part, ordering Defendants to produce a privilege log and documents relating to their affirmative defense of fundamental

alteration and the receipt of any funds by the Dearborn Courts. In the alternative, they could designate a representative for a Rule 30(b)(6) deposition. (Docket No. 49).

In a later-filed response, Defendants represented that they had not withheld any privileged materials and stipulated that Dearborn Courts received federal funds. They also conceded that no written determination of "fundamental alteration" had been made, a prerequisite to raising the defense under 28 C.F.R. § 35.164. (Docket No. 53). Defendants also agreed to make Judge Humphrey available "to testify, limited to the issue of fundamental alteration and trial court procedure, or as otherwise required by the Court and subject to the restrictions imposed on him by the Code of Judicial Conduct." (Docket No. 53 Ex. B. at 1).

Finally, Defendants were prepared to concede in their Proposed Joint Stipulations that Plaintiffs requested interpreter services for Carolyn Prakel's hearings, and that the Dearborn Courts paid for an interpreter only when Stephen Prakel was a witness in her case, since Dearborn Courts provide interpreters for litigants, witnesses, and jurors, but generally not for spectators. (Docket No. 53 Ex. E at 1, 3). They also proposed to stipulate that Judge Humphrey and then-Chief Justice Shepard received Plaintiffs' separate requests for reimbursement and failed to respond. (*Id.* at 4, 7). The court ruled that the Defendants had complied with the court order and, because they had conceded that no written determination was made, the court ordered the fundamental alteration defense stricken. (Docket No. 55).

## II. Legal Standards

### A. General

Federal Rule of Civil Procedure 26 dictates that parties engage in broad, liberal discovery encompassing "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978); FED. R. CIV. P. 26. However, Rule 26 also authorizes protective orders to limit or preclude discovery when there are less burdensome, inconvenient, or expensive sources, or when the burden and expense for the movant outweigh the likely benefit for the non-movant. FED. R. CIV. P. 26(b)(2)(C)(i),(iii), (c)(1)(A). Among the factors considered is the nature and amount of the controversy. *Id.* at (b)(2)(C)(iii).

Depositions of opposing parties are part of this broad discovery and do not typically require leave of the court, unless the opposing party does not stipulate to the deposition and the deposition would run afoul of another Rule or the party has already been deposed. FED. R. CIV. P. 30(a). A party seeking to depose an organization, such as the Division, "must describe with reasonable particularity the matters for examination." FED. R. CIV. P. 30(b)(6).

The court has jurisdiction over this case because it arises under federal laws. 28 U.S.C. § 1331. Thus, federal privilege law applies in the case, but principles of comity "[impel] federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and

5

procedural policy." *Mem. Hosp. for McHenry County v. Shadur*, 664 F.2d 1058, 1061 (7th Cir. 1981) (quoting *U.S. v. King*, 73 F.R.D. 103, 105 (E.D.N.Y. 1976)).

### B. Particular

#### 1. Deposition of Court Officers

While generally the burden of persuasion is on the party seeking to prevent discovery, *see, e.g.*, *Mullins v. Dep't of Labor of Puerto Rico*, 269 F.R.D. 172, 175-76 (D. P.R. 2010), there is no standard by which to evaluate the propriety of requests to depose sitting judges and justices. The court finds it prudent to use the standard for deposing opposing attorneys as a starting point. Thus, Plaintiffs must show that: "(1) no other means exist[s] to obtain the information than to depose [the judge or justice], . . .; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Sherman v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986). However, the court views Defendants' request to depose sitting judges and a former Chief Justice with an even more "jaundiced eye" than the court normally does for requests to depose opposing counsel. *See M&R Amusements Corp. v. Blair*, 142 F.R.D. 304, 305 (N.D. Ill. 1992).

#### 2. Deliberative Process Privilege

The internal deliberations of governmental agencies and actors in arriving at decisions are shielded from discovery. This includes judges, who generally may not be compelled to testify about their mental impressions. *See U.S. v. Morgan*, 313 U.S. 409, 422 61 S. Ct. 999, 85 L. Ed. 1429 (1941); *Fayerweather v. Ritch*, 195 U.S. 276, 307, 25 S. Ct. 58, 49 L. Ed. 193 (1904).

The privilege exists, in part, to further the principle that courts speak through their records. *Matter of Cook*, 49 F.3d 263, 265 (7th Cir. 1995). The burden is on the party seeking to prevent disclosure to show the deliberative process privilege applies. *K.L. v. Edgar*, 964 F. Supp. 1206, 1209 (N.D. Ill. 1997).

### III. Discussion

#### A. Propriety of the Depositions

As stated *supra*, Plaintiffs must make a prima facie showing that the information sought is: (1) unavailable from any other source; (2) is relevant and essential to the case; and (3) is unprivileged.

##### 1. Unavailability From Other Sources

Plaintiffs argue that the Defendants' intransigence in responding to discovery requests have left the judges as the only source of information. Defendants' only responses to Plaintiffs' discovery on policies and procedures for interpreter services was to say that Judges Humphrey and Cleary make such decisions for their courts; they did not provide the name of any responsible person from the Division. (Plaintiffs' Ex. 2 at 2). Defendants' other responses to written interrogatories have represented that the "Indiana State Courts are not a unified court system but consist of ninety-two (92) individual counties." (Plaintiffs' Ex. 3 at 1). Defendants do not direct Plaintiffs or the court to any administrative rules or other materials that provide county judges with guidance on how to respond to requests from hearing impaired spectators for interpreter services. Defendants' response further states that "[p]rovision of sign language interpretation services cannot be provided to

7

incidental spectators at relatively perfunctory proceedings . . . for both budgetary and practical reasons." (*Id.* at 2). Finally, Defendants stated "[t]here were no internal discussions" on Plaintiffs' request for interpreters, and the decisions were made solely by the applicable judges. (*Id.*).

Given these discovery responses, the court can reasonably infer that in Indiana, county-level courts have almost complete autonomy in making decisions about accommodations for hearing impaired spectators, and that Dearborn County courts do not provide official guidelines for judges on how to evaluate such requests. There has been no showing that the Dearborn Courts employ an "administrator" or other person to promulgate or enforce policies for the court that apply to the claim at issue. It therefore follows that Magistrate Judge Schmaltz and Judges Humphrey and Cleary are the only available sources of information on whether the Dearborn Courts complied with Title II and section 504 in their refusal to provide Mr. Prakel with an interpreter.

Defendants, when asked to identify the parties who "participated in determining whether to provide interpreters for Steven Prakel," listed the Division, although they did not list a specific officer within the Division. (Plaintiffs' Ex. 2 at 2). This response suggests that the Division would be responsible for evaluating Plaintiffs' reimbursement requests. Therefore, information on any state-level policies and procedures for Title II and section 504 compliance—and whether the State Defendants complied with them in not reimbursing Plaintiffs for interpreter services—could presumptively come from the Division rather than former Chief Justice Shepard.

8

### 2.     Necessity and Relevance of Information Sought

Plaintiffs must prove intentional discrimination to recover compensatory damages.  *Love v. Westville Correctional Ctr.*, 103 F.3d 558, 561 (7th Cir. 1996) (citation omitted).  To prove intentional discrimination,  Plaintiffs must show that the Dearborn Court Judges:  knew the Title II and section 504 requirements and that they applied to their courts; were on notice of Plaintiffs' requests; and intentionally provided lesser accommodation than the law requires.  *See Proctor v. Prince George's Hosp. Ctr.*, 32 F. Supp. 2d 820, 829 (D. Md. 1998).

Plaintiffs claim they need to question Judges Cleary, Schmaltz, and Humphrey about the Dearborn Courts' procedures, whether they were on notice of Plaintiffs' requests, and whether they attempted to obtain interpreters.  They also allege it is necessary to depose former Chief Justice Shepard as to whether he was on notice of Plaintiffs' reimbursement requests and what actions he took, if any, in response to the requests.  (Plaintiffs' Response 6, 7-8).  Defendants aver that county judges conduct Title II and section 504 training for their courts and determine whether to provide interpreters (*id.* 9; Plaintiffs' Exs. 2 at 2, 3 at 2), so Plaintiffs opine that the necessary information to prove their claims can only be obtained by deposing the Dearborn Court judges.  Plaintiffs argue that since there is no outright bar against judicial testimony on factual matters pertinent to the case, rather than mental processes, *U.S. v. Frankenthal*, 582 F.2d 1102, 1108 (7th Cir. 1978), they should be allowed to depose the individual Defendants.  (Plaintiff's Response 9

9

(citing *Neiman v. Keane*, 1999 WL 117694, at \*2-\*3 (N.D. Ill. Mar. 1, 1999))). The court agrees with Plaintiffs that the subject matter on which they seek to depose Defendants is essential to proving their claims of intentional discrimination.

Defendants concede that Plaintiffs requested interpreter services for the Dearborn Court hearings, no services were ever provided, and that Judge Humphrey and then-Chief Justice Shepard received Plaintiffs' separate requests for reimbursement and failed to respond. The court is satisfied that no depositions would be necessary to establish that Defendants were on notice of Plaintiffs' request and that they took no action in response. However, the issues of the Dearborn Courts' and the State Defendants' respective Title II and section 504 policies and procedures were left unaddressed. This information sought cannot be obtained through another, less burdensome means of discovery. They have therefore shown the relevance and necessity of the information sought.

However, before reaching the final element—whether the information sought is privileged—the court concludes that deposing former Chief Justice Shepard imposes too great a burden on him for the relevant information sought by Plaintiffs. As Defendants point out, Indiana does not have a unified court system; rather, each county operates its court system with no direct supervision by the Indiana Supreme Court or the Division of State Court Administration. (*See, e.g.*, Plaintiffs' Ex. 3 at 1). There are no statewide standards for ensuring compliance with Title II or section 504, and ensuring

that Dearborn Courts complied with their Title II and section 504 procedures is not within the Chief Justice's purview. Plaintiffs have demonstrated no evidence as to why the former Chief Justice, rather than a representative of the Division, would be better equipped to testify as to the State of Indiana's policies and procedures regarding Title II and section 504 accommodation and reimbursement requests. Despite the fundamental importance of the underlying issue—access to courts for a hearing-impaired individual—the court is also mindful that this suit is not a class-action, and Plaintiffs seek less than $1,000 in damages and no injunctive relief. (Defendants' Reply 1); FED. R. CIV. P. 26(b)(2)(C)(iii). Finally, former Chief Justice Shepard is not and has never been a party in this case. The court concludes that any additional probative evidence Plaintiffs could obtain from the former Chief Justice is so minimal as to be greatly outweighed by the burden imposed by his deposition, and therefore **GRANTS** Defendants' motion for a protective order as it pertains to former Chief Justice Shepard.

### 3. Deliberative Process Privilege

Defendants claim that the decisions, if any, by the Dearborn Court judges and the Division not to provide interpreter services or reimburse Plaintiffs for their expense in hiring interpreters are protected by the deliberative process privilege. According to Defendants, allowing judges or a Division official to testify would not only improperly force them to divulge their mental impressions, thoughts, and reasoning in deciding how they ruled, it would violate the longstanding principle that courts speak only through their

11

decisions and published records. *Fayerweather*, 195 U.S. at 307; *Clary v. Lite Machs. Corp.*, 850 N.E.2d 423, 435-36 (Ind. Ct. App. 2006); *see also O'Malia v. State*, 192 N.E. 435, 436 (Ind. 1934); *State v. Isaacs*, 757 N.E.2d 166, 167 n.1 (Ind. Ct. App. 2001). This protection also applies to the deliberative processes of administrative bodies or board members, such as the Division, in making decisions, on the principle that administrative bodies speak only through their rules, decisions, and records. *Morgan,* 313 U.S. at 422; *see also Med. Licensing Bd. of Ind. v. Provisor*, 669 N.E.2d 406, 409-10 (Ind. 1996). Therefore, the court may not force judges or administrative decision makers to testify to their thought processes for Plaintiffs' requests.

Moreover, Defendants argue, Plaintiffs' requests show that they intend to go beyond purely factual matters and to probe Defendants' mental processes in making decisions. Defendants already concede that Judges Humphrey and Cleary were on notice of Plaintiffs' requests for interpreter services and reimbursement and either denied them or declined to respond. Any more information—such as whether the judges determined that providing interpreters would disrupt court proceedings—is not discoverable absent special circumstances, *Ciarlone v. City of Reading*, 263 F.R.D. 198, 202 (E.D. Pa. 2009) (citations omitted); *Fayerweather*, 195 U.S. at 306-07; *Grant v. Shalala*, 989 F.2d 1332, 1344-45 (3d Cir. 1993), and Plaintiffs have not shown any such circumstances.

Plaintiffs counter that the privilege does not apply for two reasons. First, as stated *supra*, the subject matter of the depositions pertain to purely factual

12

matters—the Dearborn Courts' policies and training for Title II and section 504; what notice, if any, each Defendant had of requests for an interpreter and reimbursement; and what action, if any, Defendants took. Plaintiffs also seek to ascertain whether the Division plays a role in providing sign language interpreters to Dearborn Courts analogous to its support in providing foreign language interpreters for county courts. (Plaintiffs' Ex. 4 at 2). Those facts—and any communications made after the agency decision—are not protected by the deliberative process privilege, even though any thoughts and discussions leading up to the decisions would be. *U.S. v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993); *Dean v. F.D.I.C.*, 389 F. Supp. 2d 780, 794 (E.D. Ky. 2005). Since Defendants did not engage in any internal discussions about Plaintiffs' requests (Plaintiffs' Ex. 3 at 2), Plaintiffs argue that Defendants cannot invoke the privilege. *Becker v. IRS*, 34 F.3d 398, 403 (7th Cir. 1994).

Secondly, Plaintiffs argue that even if the processes underlying the decisions were subject to the deliberative-process privilege, the privilege is not absolute. Rather, courts consider the relevance and availability of the information being sought, the government entities' roles in the litigation, and whether disclosure would inhibit frank policy discussion. *See FTC v. Warner Comm., Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984). Courts also view the deliberative process privilege with particular concern and skepticism in civil rights cases. *See Kodish v. Oakbrook Terrace Fire Protection Dist.*, 235 F.R.D. 447, 451-52 (N.D. Ill. 2006). Plaintiffs contend that Defendants have not produced information about their Title II and section 504 policies and training,

13

or whether they complied with these policies when they did not respond to Plaintiffs' requests.  Therefore, according to Plaintiffs, the depositions are the only means by which they can obtain this information, which is essential for Plaintiffs to prove their allegations of intentional discrimination.  Plaintiffs argue that public policy concerns dictate that this material should be divulged, and the deliberative process privilege should not apply.  *Hinsdale v. City of Liberal*, 961 F. Supp. 1490, 1495 (D. Kan. 1997); *Grossman v. Schwarz*, 125 F.R.D. 376, 381 (S.D.N.Y. 1989).

   The court agrees with Plaintiffs that the information being sought is purely factual and does not invade Defendants' thought processes.  Defendants have claimed that the Dearborn Court judges were responsible for implementing Title II and section 504 policies, procedures, and training.  Specific knowledge of these policies and procedures is required to determine whether the judges followed those policies and procedures in denying Plaintiffs' requests.  Plaintiffs do not appear to be asking for Judges Humphrey and Cleary's motivations or thought processes that led to their decisions to deny Plaintiffs' requests for interpreter services and reimbursement.

   Similarly, Plaintiffs are only seeking information on the Division's Title II and section 504 policies and procedures, whether the Division was on notice of Plaintiffs' request for reimbursement, and if any action was taken in response to the reimbursement request besides former Chief Justice Shepard's failure to

14

respond.[2]  This is essential in determining whether the Division complied with its policies as to Plaintiffs' request and does not probe the deliberations or discussions, if any, that the Division undertook in response to their request. Since this information does not pertain to decisions the Dearborn Courts made, and no formal decision was made by the Division, Defendants cannot rest on the argument that its records speak for themselves.  The court, satisfied that the information sought is purely factual, finds that the deliberative process privilege does not apply.

The court, however, wishes to clarify that its holding is narrow.  The court is not holding that any of the Defendants' motivations or internal deliberations would not be protected by deliberative process, and does not reach the issue of whether public policy concerns compel the production of otherwise privileged information.  The court is only holding that the above-mentioned factual information is not shielded and may be discovered via deposition.

### B. Additional Issues

#### 1. Other Assertions of Privilege

##### a. Court Administrative Rule 9(G)(2)(b)

Defendants argue briefly that information that any work product or inter-agency or intra-agency advisory or deliberative materials that were created in response or otherwise relate to Plaintiffs' requests are shielded by Indiana Administrative Court Rule 9(G)(2)(b).  IND. ADMIN. COURT R. 9(G)(2)(b)(i), (iv)

---

[2] The court also finds this subject matter sufficiently well-defined to satisfy the particularity requirement for a Rule 30(b)(6) deposition.  FED. R. CIV. P. 30(b)(6).

("Court Rule 9(G)"). Since the court has ruled that only those factual matters discussed *supra* are subject to deposition, it need not reach the issue of whether deliberative or advisory materials are shielded by Court Rule 9(G).

### b. Attorney-Client and Work-Product Privileges

Defendants further argue that any communications between Indiana Supreme Court officials and Division staff are also protected under traditional attorney-client and work-product privilege doctrines. They claim that communications between the parties are "confidential and properly thought of as attorney-client or mental impressions." (Defendants' Brief 10). The court has already granted the motion for protective order as it pertains to former Chief Justice Shepard and limited the Rule 30(b)(6) deposition to the Division's policies and procedures, along with any notice that the Division itself had and any specific actions it took in response to Plaintiffs' reimbursement request independent of former Chief Justice Shepard's failure to respond. Any communications between the Indiana Supreme Court and the Division staff are not relevant and therefore not discoverable, regardless of privilege.

### 2. Challenge to Rules and Effect on Public Policy

Defendants finally claim that Indiana court rules, policies, and practices, like statutes, are presumptively constitutional, speak by their plain text, and must be challenged facially rather than by exploring the deliberative processes used to determine the rules and policies. (Defendants' Brief 11-12 (citing *Wayne Co. Prop. Tax Assessment Bd. of Appeals v. Utd. Ancient Order of Druids-Grove #29*, 847 N.E.2d 924, 928 (Ind. 2006); *Garrod v. Garrod*, 590 N.E.2d 163,

16

170-71 (Ind. Ct. App. 1992) (citing *Miller v. State*, 517 N.E.2d 64, 71 (Ind. 1987), *superseded on other grounds by statute*, IND. CODE 35-37-4-6, *as recognized in Howard v. State*, 853 N.E.2d 461, 466 (Ind. 2006)). Furthermore, they argue, public policy would be injured by the discovery of any deliberations that led to their decisions on Plaintiffs' requests. No Indiana trial court rules are expressly mentioned in the briefing, and if Plaintiffs are in fact challenging Indiana Trial Court Rule 43(c), which empowers courts to appoint interpreters in compliance with the ADA (*see* Docket No. 53 Ex E at 1-2), it is a facial challenge—whether, in fact, the Dearborn Court judges complied with the ADA. Moreover, the court has limited the depositions to purely factual matters. The court therefore declines to bar depositions on these grounds.

### 3.     Designation of Judge Humphrey as Rule 30(b)(6) Witness

In the aftermath of this court's order on Plaintiffs' motion to compel, Defendants informed Plaintiffs that if they believed "that a [Rule 30(b)(6)] witness would be helpful, then we would designate Judge Humphrey to testify." (Docket No. 53 Ex. D at 1). In the interests of conserving scarce judicial resources, Judge Humphrey may fairly represent the Circuit Court as to the Circuit Court's Title II and section 504 policies and procedures, and whether and how those policies were applied to Plaintiffs' requests to the Dearborn Courts. The court therefore **GRANTS** Defendants' motion for protective order for Magistrate Judge Schmaltz and **DENIES** their motion for Judge Humphrey. Judge Humphrey may also fairly represent the Superior Court if Defendants take the position that the Dearborn Courts are a unified court system. If,

17

however, the Superior Court and Circuit Court are independent courts, then Judge Cleary must testify on those matters for the Superior Court. The court *conditionally* **GRANTS** Defendants' motion for Judge Cleary.

Judge Humphrey may not, however, speak for the State Defendants. Plaintiffs' request to the State Defendants was distinct from those made to the Dearborn Courts, and Defendants simply cannot have it both ways. They cannot state that Indiana does not have a unified court system and each county's court system operates independently, and then ask a county court judge to testify to the State Defendants' policies and procedures. The court therefore **DENIES** Defendants' motion for the Division. The Division must designate an official for a Rule 30(b)(6) deposition to answer questions on the State Defendants' Title II and section 504 policies and procedures, and whether and how those policies were applied to Plaintiffs' request to then-Chief Justice Shepard.[3]

### 4. Dispositive Motion Deadline

Defendants have filed a joint motion to extend the deadline to file summary judgment motions, currently scheduled for July 1, 2013, to September 1, 2013. (Docket No. 56). The court, mindful that additional time must be allotted for these depositions, **GRANTS** Defendants' motion.

---

[3] Defendants maintain that Plaintiffs lack standing to pursue claims and intend to file a motion to dismiss on those grounds. (Defendants' Brief 2; Docket No. 53 at 2). Rule 26(d) allows Plaintiffs to conduct discovery at this time in the absence of Defendants filing a motion showing that the interests of justice require a stay of discovery pending resolution of a particular issue. No such motion has been filed.

18

### IV. Conclusion

For the foregoing reasons, Defendants' Motion for Protective Order Regarding Depositions (Docket No. 40) is **DENIED** as it pertains to the Division and Judge Humphrey. It is **GRANTED** as it pertains to former Chief Justice Shepard and Magistrate Judge Schmaltz. It is **GRANTED** as it pertains to Judge Cleary so long as Defendants claim that the Dearborn Courts are a unified court system. The Joint Motion for Extension of Time (Docket No. 56) is also **GRANTED**. The case shall proceed in a manner consistent with this entry.[4]

**SO ORDERED** the 28th day of June, 2013.

_____
William G. Hussmann, Jr.
United States Magistrate Judge
Southern District of Indiana

**Served electronically on ECF-registered counsel of record.**

---

[4] In allowing depositions of a judge to proceed, the *Neiman* court cautioned plaintiff's attorney "not to read this opinion as a *carte blanche* invitation . . . [t]he depositions of [the judges] should proceed in conformity with our analysis above. Nothing more and nothing less." 1999 WL 117694, at *3. The court similarly cautions Plaintiffs in this case.