# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### NEW ALBANY DIVISION

| | | |
|---|---|---|
| **STEVEN PRAKEL**, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **CAROLYN PRAKEL**, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | Case No. 4:12-cv-045-SEB-WGH |
| v. | ) | |
| | ) | |
| **THE STATE OF INDIANA**, et al. | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM IN SUPPORT OF MOTION
## FOR PARTIAL SUMMARY JUDGMENT

### INTRODUCTION

Steven Matthew Prakel ("Mr. Prakel") and his mother, Carolyn Prakel ("Ms. Prakel") (collectively "Plaintiffs") move for partial summary judgment and ask the Court to hold that Defendants violated Title II of the Americans with Disabilities Act and section 504 of the Rehabilitation Act in denying the Prakel family equal access to the courts.  The undisputed facts establish that Defendants refused to provide interpreters to ensure effective communication with Mr. Prakel, and that as a result, the Prakels were required to pay for Mr. Prakel to have equal access to court proceedings in which Ms. Prakel was a criminal defendant.

The legal issue presented in this case is whether Defendants' failure to provide interpreter services for Mr. Prakel violated Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.* ("Title II"), and section 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("section 504").  In moving for summary judgment on the question of liability, Plaintiffs ask this Court to

declare that Defendants are required to provide auxiliary aids and services to ensure that deaf spectators receive the benefits of effective participation in court proceedings, award equitable relief in the amount of $264.00 for interpreter services paid for by Ms. Prakel, and set this case for trial on the question of what compensatory damages should be awarded to Mr. Prakel and Ms. Prakel to remedy the discrimination they experienced as the result of Defendants' conduct.

## I.   STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

Mr. Prakel is a deaf individual.  (Ex. B, Defendants' Brief in Support of Protective Order [Docket No. 41] at pg. 2; Ex. C, Declaration of Steven Matthew Prakel at ¶ 4; Ex. D, Declaration of Carolyn Prakel at ¶ 3).  His primary mode of communication is American Sign Language. (Ex. C, Declaration of Steven Matthew Prakel at ¶ 5).  In order to access spoken communications, Mr. Prakel requires a qualified sign language interpreter.  (Ex. C, Declaration of Steven Matthew Prakel. at ¶ 4, 6).  For example, Mr. Prakel uses the video relay service to make telephone calls.  (Ex. C, Declaration of Steven Matthew Prakel at ¶ 23).  The video relay service is a system that permits a deaf person who uses sign language to call a hearing person by videoconferencing through a qualified sign language interpreter.  (*Id.*)  Mr. Prakel attended the National Technical Institute of the Deaf where his classes were conducted in American Sign Language.  (*Id.* at ¶ 7).  Mr. Prakel is able to follow court proceedings only when auxiliary aids and services such as qualified sign language interpreters are provided.  (*Id.* at ¶ 9; Ex. D, Declaration of Carolyn Prakel at ¶ 7).

Carolyn Prakel is Mr. Prakel's mother.  (Ex. D, Declaration of Carolyn Prakel at ¶ 3). She is hearing and was the criminal defendant in proceedings in Defendants' courts.  (Ex. D, Declaration of Carolyn Prakel at ¶¶ 4, 5; Ex. F, Deposition of Judge Cleary, at p. 8:11-17; Ex. H, Deposition of Judge Humphrey, at p. 12:5-6).  The criminal proceedings involving Ms. Prakel

were open to the public. (Ex. F, Deposition of Judge Cleary, at p. 16:7-12). Family members of criminal defendants are permitted to attend such court proceedings and Defendants have acknowledged that it is important that family members do so in order to understand what is happening to their loved ones in court. (Ex. F, Deposition of Judge Cleary, at p. 8:4-10; Ex. H, Deposition of Judge Humphrey, at p. 29:8-11, 33:9-18).

Ms. Prakel wanted her son, Mr. Prakel, to attend the court proceedings against her, both to provide emotional support and so that he could better understand the legal jeopardy she faced. (Ex. D, Declaration of Carolyn Prakel at ¶¶ 6, 14). Likewise, Mr. Prakel wanted to attend the court proceedings both to provide emotional support and so he could understand his mother's legal situation. (Ex. C, Declaration of Steven Matthew Prakel at ¶ 8). Had Mr. Prakel been a hearing individual, he would have been permitted to attend these proceedings free of charge. (Ex. F, Deposition of Judge Cleary at 15:18-25; Ex. H, Deposition of Judge Humphrey, at p. 25:15-19; Ex. J, 30(b)(6) Deposition of the Division of State Court Administration (David Remondini), at p. 16:6-24, 17:16-19:13).

The Indiana Supreme Court and Division of State Court Administration are state entities charged with oversight of the Indiana court system. (Ex. T, Division of State Court Administration, http://www.in.gov/judiciary/admin/index.htm; Ex. U, About the Division of State Court Administration, http://www.in.gov/judiciary/admin/2498.htm). The State Defendants pay the salaries and benefits of the county judges, manage the program that provides interpreters in the county courts, advise the county judges on their legal obligations and the policies and procedures of the state court administration, train the judges on the requirements of law, provide language line access for individuals with limited English proficiency, implement consent decrees such as a consent decree requiring the provision of sign language interpreters in court

3

proceedings, provide funding to county courts for language access including interpreters in all trial courts, communicate state court policies to the county courts, and refer for investigation by the Judicial Commission.  (Ex. J, 30(b)(6) Deposition of Division of State Court Administration, at p. 8:2-4, 9:16-10:14, 13:11-20, 15:20-16:9, 17:13-18:3, 19:5-13, 20:8-21:18, 30:19-23, 35:4-12, 55:11-19, 62:2-22; Ex. F, Deposition of Judge Cleary, at p. 6:24-7:1; Ex. H, Declaration of Humphrey, at p. 9:2-8, 16:16-20; Letter from Chief Judge Shepard to United States Department of Justice, dated September 4, 2009, at p. 2-3).

The named judges who denied the Prakels equal access to the courts are employed by the State and are subject to the policies of the Division of State Court Administration and the Supreme Court of Indiana.  (Ex. J, 30(b)(6) Deposition of Division of State Court Administration, at p. 8:2-4, 9:16-10:14, 13:11-20; Ex. M, Def.'s Responses to Plaintiffs' Requests for Admissions, stating at pg.1 "…Judge's salaries are funded by the State…").  The Defendant judges presided over the proceedings involving Ms. Prakel, and received and denied Mr. Prakel's requests for interpreters.  (Ex. C, Declaration of Steven Matthew Prakel, at ¶¶ 14-19, 22-29, 32, 37; Ex. I, Transcript of Proceedings, at pgs. 5-6).  In addition to being paid by the State, they are bound by the State's policies and Defendants have admitted that the Dearborn courts are state entities.  (Ex. M, Defendants' Responses to Plaintiffs' Request for Admission Nos. 17-19).  Furthermore, Judge Humphrey, who presided over some of the proceedings at issue, acted upon the advice and consent of the Division of State Court Administration in repeatedly contacting Brenda Rodeheffer at the Division of State Court Administration about Mr. Prakel's requests for interpreters and then again about his requests for reimbursement.  (Ex. H, Deposition of Judge Humphrey, at 16:16-20, 22:13-16, 24:15-17; Ex. J, 30(b)(6) Deposition of Division of State Court Administration (David Remondini), at 25:23-26:15).  Defendants receive

federal financial assistance.  (Ex. P, Docket 50, Defendants' Response to Motion to Compel, at pg. 1; Ex. J, 30(b)(6) Deposition of Division of State Court Administration (David Remondini), at 63:20-64:2; Ex. O, Letter of Chief Judge Randall Shepard to the United States Department of Justice, Dated September 4, 2009, at pg. 1; Ex. V, Def.'s Responses to Plaintiff Steven Prakel's Second Request for Production of Documents Response No. 4**).**

The courts in Indiana are open to the public.  (Ex. O, Letter of Chief Judge Randall Shepard to the United States Department of Justice, Dated September 4, 2009 at pg. 5).[1]  Such public access is an integral part of the Court's mission.  (Ex. O, Letter of Chief Judge Randall Shepard to the United States Department of Justice, Dated September 4, 2009 at pgs. 1-5).  Family members attend proceedings involving their loved ones both to understand the legal process through which their family member is going, and to provide emotional support.  (Ex. F, Deposition of Judge Cleary at 8:4-10; Ex. H, Deposition of Judge Humphrey at 29:8-11, 33:9-18).

Defendants have long been on notice that the failure to provide interpreter services for deaf individuals in the courtroom violates the ADA and section 504.  In a 1994 Consent Decree filed in the Southern District of Indiana, the State of Indiana agreed to provide qualified sign language interpreters, at no cost, to a deaf individual appearing in court.  (Ex. R, Consent Decree, *Clark v. State*; *see also* Ex. S, Notice of Institution of Formal Proceedings, Statement of Charges, In the Matter of Judge Nemeth at pg. 6-7).

---

[1] "The Indiana Constitution provides for a public trial in all criminal prosecutions." *Hackett v. State*, 266 Ind. 103, 110 (1977) (*citing* IND.CONST. Art. 1 § 13).  "The importance of the right to an open trial was recognized by our legislature, which provided by statute for open trials and a procedure courts must follow to exclude the general public from such proceedings." *Sparks v. State*, 953 N.E.2d 674 (Ind. App. 2011), transfer denied, 962 N.E.2d 652 (Ind. 2011) (*citing* IND. CONST. § 5–14–2–1 *et seq.*).

Ms. Prakel had hearings in two separate courts: the Dearborn Superior Court No. 1, and

Dearborn Circuit Court.  For these hearings, Mr. Prakel needed and requested that Defendants

provide qualified sign language interpreters.  (Ex. C, Declaration of Steven Matthew Prakel at ¶¶

6, 9–17, 19, 22, 24–28, 37; Ex. E, Letter from Steven Matthew Prakel to Judge

Humphrey/Dearborn Circuit Court, Dated May 20, 2010 at pg. 1; Ex. F, Deposition of Judge

Cleary at 13:8-14; Ex. H, Deposition of Judge Humphrey at 36:1-4).

### Dearborn Superior Court No. 1

Mr. Prakel first requested interpreter services from Dearborn Superior Court No. 1 for a

hearing on April 29, 2010 in which his mother was a defendant.  (Ex. C, Declaration of Steven

Matthew Prakel at ¶¶ 10-11).  He called the Superior Court No. 1 and requested interpreter

services for this hearing.  (Ex. C, Declaration of Steven Matthew Prakel at ¶ 11; Ex. M, Def.'s

Responses to Plaintiffs' Requests for Admissions No. 2).  Mr. Prakel appeared at the hearing,

only to discover that Defendants had failed to provide interpreters.  (Ex. C, Declaration of Steven

Matthew Prakel at ¶ 15; Ex. D, Declaration of Carolyn Prakel at ¶ 8; Ex. M, Def.'s Responses to

Plaintiffs' Requests for Admissions No. 4).  Judge Jonathan Cleary presided over the hearing.

(*Id*.).  Without interpreters, Mr. Prakel was unable to understand the proceedings at the hearing.

(Ex. C, Declaration of Steven Matthew Prakel, at ¶ 17).

On or about May 14, 2010, Mr. Prakel again called the Superior Court No. 1, and asked

for interpreters for all proceedings.  (Ex. C, Declaration of Steven Matthew Prakel at ¶¶ 11–13;

Ex. M, Def.'s Responses to Plaintiffs' Requests for Admissions No. 2).  The court told Mr.

Prakel that it would not provide interpreters unless he was a witness or a defendant.  (Ex. C,

Declaration of Steven Matthew Prakel at ¶ 12).  When Mr. Prakel persisted in asserting his need

6

for and right to an interpreter, the individual at the court informed him that she would ask Judge

Cleary.  (Ex. C, Declaration of Steven Matthew Prakel at ¶ 13).

Judge Cleary scheduled a hearing for June 23, 2010, to consider Mr. Prakel's request for

interpreter services.  (Ex. G, Setting Form, *State of Indiana v. Carolyn Prakel*, Hearing on

Request for Interpreter, Filed May 25, 2010.  Understanding and being able to communicate at a

hearing to determine whether interpreters will be provided is important.  (Ex. F, Deposition of

Judge Cleary at 14:13-19.  However, no interpreter was provided for Mr. Prakel at this hearing.

(Ex. C, Declaration of Steven Matthew Prakel at ¶ 17 ; Ex. D, Declaration of Carolyn Prakel at ¶

9; Ex. F, Deposition of Judge Cleary at 14:2-12.  Without an interpreter and unrepresented, Mr.

Prakel was extremely upset and frustrated by his inability to communicate with the court and

attempted to renew his request for interpreters yet again in writing to the court clerk.  (Ex. C,

Declaration of Steven Matthew Prakel at ¶¶ 16-21.  The clerk refused to communicate with him

in writing.  (Ex. C, Declaration of Steven Matthew Prakel at ¶ 16, Ex. F, Deposition of Judge

Cleary at 15:6-17.

Judge Cleary denied Mr. Prakel's request for an interpreter.  (Ex. I, Transcript of

Proceedings, at pg. 5-6.  Mr. Prakel later discovered that during the hearing Judge Cleary and

Mr. Day, an attorney who did not represent Mr. Prakel, discussed whether Mr. Prakel would

need someone to take care of him if his mother went to jail.  (*Id*. at 3-6).He was horrified and

humiliated to discover that the court had participated in such discussion in open court, on the

record, without his participation.  (Ex. C, Declaration of Steven Matthew Prakel at ¶ 20).

The following year, on or about April 18, 2011, Ms. Prakel had another court appearance

in Superior Court No. 1.  (Ex. D, Declaration of Carolyn Prakel at ¶ 16).  In advance of this court

appearance, Mr. Prakel again contacted the court through relay services to request interpreter

services.  (Ex. C, Declaration of Steven Matthew Prakel at ¶ 37; Ex. D, Declaration of Carolyn

Prakel at ¶¶ 16-17).  The court did not provide interpreters for the hearing, and as a result, Mr.

Prakel was unable to understand the courtroom proceedings that occurred that day.  (*Id*.)

<div align="center">**Dearborn Circuit Court**</div>

On or about May 14, 2010, Mr. Prakel requested that interpreters be provided for

proceedings involving his mother in Dearborn Circuit Court, first calling the court via video

relay services.  (Ex. C, Declaration of Steven Matthew Prakel at ¶ 22-24; Ex. M, Def.'s

Responses to Plaintiffs' Requests for Admissions No. 3).  As with the Superior Court No. 1, Mr.

Prakel was told by Dearborn Circuit Court officials, including Connie Sandbrink that he would

not be provided an interpreter unless he was a witness or litigant.  (*Id*.; Ex. H, Deposition of

Judge Humphrey, at pg. 16:1-6).  When he persisted, Ms. Sandbrink told him to file a written

request.  (*Id*.)  Mr. Prakel did so on May 20, 2010.  (Ex. E, Letter from Steven Matthew Prakel to

Judge Humphrey/Dearborn Circuit Court).  When he did not receive a response, he called the

court to inquire about the status of his request.  (Ex. C, Declaration of Steven Matthew Prakel at

¶ 28).  However, the court refused to accept his video relay call.  (*Id*.)  He was told that the court

was "upset" and "annoyed" by his requests for interpreters.  (Ex. C, Declaration of Steven

Matthew Prakel at ¶ 29).

The Circuit Court's Judge Humphrey concedes that he received Mr. Prakel's written

request and that he consulted with the Division of State Court Administration about the request

on at least two occasions.  (Ex. H, Deposition of Judge Humphrey at 14:10-13).  Judge

Humphrey, acting upon the advice of his employer, the Division of State Court Administration,

decided not to provide an interpreter for Mr. Prakel.  (Ex. H, Deposition of Judge Humphrey at

36:1-10; Ex. M, Def.'s Responses to Plaintiffs' Requests for Admissions No. 4).

On or about July 6, 2010, and July 7, 2010, there were proceedings in Ms. Prakel's criminal case.  (Ex. C, Declaration of Steven Matthew Prakel at ¶ 32).  Judge Humphrey presided.  (*Id*.)  Because Defendants refused to provide an interpreter, Ms. Prakel was forced to pay for interpreter services in order for Mr. Prakel to access the criminal proceedings against her. She paid $264.00 for qualified interpreter services.  (Ex. Q, Invoices for Interpreter Services at pgs. 1-2).

## Requests for Reimbursement

The Prakels requested the help of the National Association of the Deaf ("NAD"), and on November 9, 2010, the NAD sent a letter on the Prakels' behalf to the Dearborn County Circuit Court, addressed to Judge James D. Humphrey.  (Ex. K, Letter from National Association of the Deaf to Judge Humphrey, dated November 9, 2010, authenticated by Ex. H, Deposition of Judge Humphrey at 18:23-20:12; Ex. M, Def.'s Resp. to Pl.'s Requests for Admissions at No. 9; Ex. W, Declaration of Marc Charmatz at ¶ 2).  This letter requested that the Circuit Court reimburse Ms. Prakel for costs incurred when she paid for interpreter services for two of the hearings before the Circuit Court in July 2010.  (*Id*.).  Judge Humphrey received, but did not respond to the NAD's letter.  (Ex. M, Def.'s Resp. to Pl.'s Requests for Admissions at No. 9, 10; Ex. H, Deposition of Judge Humphrey at 22:13-16).  This letter explained that Title II of the Americans with Disabilities Act and its implementing regulations require that a public entity such as the court "shall furnish appropriate auxiliary aids and services where necessary to afford an individual with a disability an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity, conducted by a public entity."  (Ex. K, Letter from the National Association of the Deaf to Judge Humphrey, dated November 9, 2010, at pgs. 1-2, citing 28 C.F.R. § 35.160(b)(1)).  The letter sought reimbursement of the funds the Prakels were required to expend

in violation of federal law which provides that the court may not impose a surcharge on an individual with a disability to cover the cost of ensuring equal access for that person.  (*Id*.)

On February 4, 2011, the NAD called Judge Humphrey's chambers and left a message requesting that Judge Humphrey let the NAD know if he had received the letter.  (Ex. L, Letter of the NAD to Chief Judge Randall Shepard, at pg. 2, authenticated by Ex. W, Declaration of Marc Charmatz, at ¶ 4).  Having received no response from either Judge Humphrey or his staff, the NAD called Judge Humphrey's chambers a second time on March 9, 2011.  (*Id*.)  Judge Humphrey's executive assistant answered and informed the NAD that she would ask Judge Humphrey whether he had received the letter, as well as investigate the grounds on which interpreter services were denied.  (*Id*.)  However, neither Judge Humphrey, nor anyone from the court responded to any of the NAD's letters and telephone calls.  (*Id*.; Ex. M, Defendants' Responses to Plaintiffs' Requests for Admissions Nos. 10, 12).

On April 22, 2011, the NAD sent a letter, addressed to then-Chief Judge Shepard, to the Supreme Court of Indiana.  (Ex. L, Letter from NAD to Chief Judge Shepard, authenticated by Ex. W, Declaration of Marc Charmatz at ¶ 4).  The letter explained the pertinent law and facts as well as the NAD's attempts to contact Judge Humphrey at the Dearborn County Circuit Court. (Ex. L, Letter from NAD to Chief Judge Shepard at pg. 1-3).  The letter requested that the Prakels be reimbursed for the costs she incurred in paying interpreter services in the courts in Indiana.  (Ex. L, Letter from NAD to Chief Judge Shepard at pg. 3).  The letter also requested that the state court system investigate the refusal to provide effective communication to Mr. Prakel and the discrimination against the Prakel family.  (*Id*.).  Defendants failed to conduct such an investigation or refer such matters for investigation as requested.  (Ex. J, 30(b)(6) Deposition of the Division of State Court Administration (David Remondini) at 50:1-5).  Defendants

concede that they received the NAD's letter to Chief Judge Shepard, and also concede that they

did not respond, investigate, or cause reimbursement to be made to the Prakels.  (Ex. M,

Defendants' Responses to Plaintiffs' Requests for Admission Nos. 13, 14).

## II.     STANDARD OF REVIEW

Summary judgment must be granted "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a).  In determining whether a genuine issue of material fact exists, the court must

view the record and all reasonable inferences in the light most favorable to the non-moving

party.  *See Nat'l Soffit & Escutcheons, Inc. v. Superior Sys., Inc.*, 98 F.3d 262, 265 (7th Cir.

1996).  No genuine issue exists if the record viewed as a whole could not lead a rational trier of

fact to find for the non-moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 587 (1986); *Ritchie v. Glidden Co.*, 242 F.3d 713, 720 (7th Cir. 2001).

## III.    ARGUMENT

Plaintiffs demonstrate below why there are no genuine issues of material fact and they are

entitled to summary judgment with respect to liability and equitable relief under Title II of the

Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq.*, and the Rehabilitation

Act, 29 U.S.C. § 794.  Plaintiffs next explain why there are no genuine issues of material fact

whether they are entitled to compensatory damages and trial is necessary only as to the amount

that should be awarded in compensatory damages.

### A.      This Court Should Declare That Defendants' Refusal to Provide Deaf Spectators with Interpreters to Ensure Effective Communication Violates Title II of the Americans with Disabilities Act

Title II states broadly that "no qualified individual with a disability shall, by reason of

such disability, be excluded from participation in or be denied the benefits of the services,

programs, or activities of a public entity, or be subjected to discrimination by any such entity."

42 U.S.C. § 12132; *see also* 28 C.F.R. § 35.130(a).  To establish a violation of Title II, a plaintiff

must show that (1) he or she is a person protected by the statute, (2) he or she was excluded from

participation in or denied the benefits of the services, programs, or activities of a public entity, or

was otherwise discriminated against by any such entity; and (3) the discrimination was by reason

of his disability.  *See, e.g.*, *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004).

> **i.      Plaintiffs Are Individuals Protected by the Americans with Disabilities Act**

Mr. Prakel is a qualified individual with a disability.  *See* 42 U.S.C. § 12131(2) (defining

"qualified individual with a disability" as "an individual with a disability who, with or without

reasonable modifications to rules, policies, or practices, the removal of . . . communication . . .

barriers, or the provision of auxiliary aids and services, meets the essential eligibility

requirements for the receipt of services or the participation in programs or activities of the public

entity.").  Mr. Prakel is disabled because he is substantially limited in the major life activities of

hearing and speaking. 42 U.S.C. § 12102(1)-(2).  Mr. Prakel is a qualified individual with a

disability because he is a member of the public who wanted to attend court proceedings as a

spectator, and such proceedings are open to the public.  *See* Ind. Code Ann. § 5-14-2-2

("Criminal proceedings are presumptively open to attendance by the general public.").  Mr.

Prakel is able to follow court proceedings when auxiliary aids and services such as interpreter

services are provided.

Ms. Prakel is likewise entitled to protection under the ADA as the hearing mother of a

deaf adult.  The ADA prohibits discrimination on the basis of a person's association with an

individual with a disability:

A public entity shall not exclude or otherwise deny equal services, programs, or activities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association.

28 C.F.R. § 35.130(g). Such impermissible discrimination occurred when Ms. Prakel was forced to pay funds so her son could participate in court proceedings that are not required of others without deaf family members. No litigant is required to pay funds for a hearing family member to attend and provide emotional support.

The Technical Assistance Manual further provides that the prohibition on discrimination covers any type of association or relationship between the individual or entity that is discriminated against and the individual or individuals with disabilities, if the discrimination is actually based on disability. TA Manual ss II-3.9000 at 7; *see also, e.g.,* *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 279-83 (2d Cir. 2009) (Wesley, J., delivering the opinion of the court on the associational discrimination claims) (holding that the hearing children of deaf parents who were pressed into interpreter duty when hospital refused to obtain interpreters could bring associational discrimination claims against the hospital); *Doe v. County of Ctr.*, 242 F.3d 437, 447 (3rd Cir. 2001); *Innovative Health Sys. v. City of White Plains*, 117 F.3d 37, 47-48 (2d Cir. N.Y. 1997) (recognizing associational discrimination claim by an alcohol and drug treatment center that was denied a zoning permit); *Schneider v. County of Will*, 190 F. Supp. 2d 1082, 1087-91 (N.D. Ill. 2002) (recognizing associational discrimination claims by two nondisabled individuals who alleged that the county denied remodeling permits because the plaintiffs sought to turn the property into a bed and breakfast with more wheelchair accessible units than required by law); *Majocha v. Turner*, 166 F. Supp. 2d 316, 324 (W.D. Pa. 2001) (holding that a hearing mother whose son was denied an appointment with a doctor's office because the child's father was deaf could assert an

associational discrimination claim).  Associational claims are consistent with a Congressional

intent to define standing for purposes of ADA and section 504 complaints as broadly as

permitted by Article III of the United States Constitution.  *See Barker v. Riverside County*

*Office of Educ.*, 584 F.3d 821, 826 (9th Cir. 2009) (citing *Innovative Health Sys., Inc.*, 117

F.3d at 47).

Since Ms. Prakel was harmed because she was forced to expend funds to ensure that

her deaf son could attend the proceedings and provide emotional support, she is an individual

protected by the statute.

### ii.    Defendants' Courtroom Activities Are Subject to Title II of the Americans with Disabilities Act

Defendants are public entities subject to the ADA.  42 U.S.C. §12131(1).  Title II

prohibits Defendants from excluding the Prakels from participating in, or denying him the

benefits of, their services, or otherwise discriminating against them because of Mr. Prakel's

hearing disability.  Title II "applies to *all* services, programs, and activities provided or made

available by public entities." 28 C.F.R. Pt. 35.102(a) (emphasis added).  This includes courtroom

proceedings.  *See, e.g.*, *Shotz v. Cates,* 256 F.3d 1077, 1080 (11th Cir. 2001) ("A trial

undoubtedly is a service, program, or activity.").  Mr. Prakel, as a spectator and as the family

member of a criminal defendant, was qualified to observe in the courtroom proceedings at issue

in this case.

The Department of Justice, which is charged with enforcing Title II of the Americans

with Disabilities Act,[2] has promulgated a regulation stating that public entities "shall take

appropriate steps to ensure that communications with applicants, *participants, members of the*

---

[2] 42 U.S.C. § 12134(a).  The Department of Justice's regulations are entitled to deference.  *E.g.,*
*Chisolm v. McManimon*, 275 F.3d 315, 325 (3rd Cir. 2001); *Kennington v. Carter*, IP02-0648-C-
T/K, 2004 WL 2137652, at *4 (S.D. Ind. June 28, 2004).

*public*, *and companions with disabilities* are as effective as communications with others." 28

C.F.R. § 35.160(a) (emphasis added).  The Department of Justice regulation further states that

public entities "shall furnish appropriate auxiliary aids and services where necessary to afford

*individuals with disabilities,* including applicants, *participants, companions, and members of the*

*public,* an equal opportunity to participate in, and enjoy the benefits of, a service, program, or

activity of a public entity."  28 C.F.R. § 35.160(b)(1) (emphases added).

     Courts have applied Title II regardless of the participant's status in the courtroom.  In

*Rafford v. Snohomish County*, a district court held that Title II applied to a deaf spectator's

request for auxiliary aids and services in the courtroom.  C07-0947RSL, 2008 U.S. Dist. LEXIS

8656 at *7-*8 (W.D. Wash. Feb. 6, 2008), *aff'd in part*, 349 F. App'x 245 (9th Cir. 2009).  The

court explained in relevant part:

> The regulations implementing Title II of the ADA provide: "A public entity shall
> furnish appropriate auxiliary aids and services where necessary to afford an
> individual with a disability an equal opportunity to participate in, and enjoy the
> benefits of, a service, program, or activity conducted by a public entity." 28
> C.F.R. § 35.160(b)(1).  In this case, plaintiff alleges, and defendants do not
> contest, that attending a trial as a spectator is a "service, program, or activity" to
> which the regulation applies. "A trial undoubtedly is a service, program, or
> activity within the meaning of § 12132." *Shotz v. Cates,* 256 F.3d 1077, 1080
> (11th Cir. 2001) (denying injunctive relief but finding that mobility impaired
> plaintiffs/spectators stated a claim under the ADA because they allegedly were
> denied physical access to a courthouse).

*Id.*  Courts have applied this same reasoning in holding that attorneys with a disability are

entitled to equal access in the courtroom.  *See, e.g.*, *Mosier v. Commonwealth of Kentucky*, 640

F. Supp. 2d 875 (E.D. Ky. 2009); *Peoples v. Nix*, No. Civ. A. 93-5892, 1994 WL 423856 (E.D.

Pa. Aug. 11, 1994).

     Since court proceedings are a "program, service, or activity" of Defendant's state court

system and Title II regulations require public entities to make accessible its programs, services,

and activities to "members of the public," 28 C.F.R. § 35.160, this Court should declare that Title II requires Defendants to make these proceedings accessible to Mr. Prakel.

### iii.    Defendant Failed to Provide the Necessary Auxiliary Aids and Services To Ensure Effective Communication with Mr. Prakel

Title II prohibits public entities from discriminating against individuals on the basis of disability.  42 U.S.C. § 12132.  The Department of Justice regulations require public entities to provide auxiliary aids and services necessary to ensure that communication with individuals with a disability is as effective as communication with others.  35 C.F.R. § 35.160.

The Department of Justice defines "auxiliary aids and services" as "effective methods of making aurally delivered information available to individuals who are deaf or hard of hearing," including qualified interpreters."  28 C.F.R. § 35.104.  When determining which auxiliary aid or service to provide, the public entity "shall give primary consideration to the requests of individuals with disabilities."  28 C.F.R. § 35.160(b)(2).  A public entity "may not place a surcharge on a particular individual with a disability or any group of individuals with disabilities to cover the costs of measures, such as the provision of auxiliary aids or program accessibility." 28 C.F.R. § 35.130(f).  Consequently, as public entities, Defendants are obligated to provide auxiliary aids and services, at no cost to Mr. Prakel (or his mother), to make court proceedings accessible to qualified individuals with a disability such as his.

On those occasions when no interpreter was provided, Mr. Prakel was unable to understand court proceedings.  These instances took place in April 2010, June 2010, and April 2011.  It was only when the Prakels paid out of pocket for interpreter expenses in July 2010 that Mr. Prakel was able to follow court proceedings.

Since interpreter services are necessary to ensure effective communication with Mr. Prakel in the courtroom, this Court should declare that Defendants' refusal to provide interpreter services for deaf spectators violated Title II and its regulations.

**B.      This Court Should Declare That Defendants Discriminated Against Mr. Prakel Solely on the Basis of His Disability in Violation of the Rehabilitation Act**

As the Seventh Circuit has observed, in view of the similarities between the relevant provisions of the ADA and section 504 and their implementing regulations, courts construe and apply the ADA and section 504 in a consistent manner. *Radaszewski ex rel. Radaszewski v. Maram*, 383 F.3d 599, 607 (7th Cir. 2004).

As with Title II, section 504 requires state and local courts to be fully accessible to individuals with a disability. *E.g.*, *Mosier*, 640 F. Supp. 2d 875; *Rafford*, 2008 WL 346386. Just as full accessibility is required to allow spectators who use wheelchairs to have access to court proceedings that are open to the public, so too must the court system provide access to court proceedings for individuals who are deaf, and their families, that is equal to that provided to others.

The elements of Title II and the section 504 differ in only two respects: (1) section 504 applies to recipients of federal financial assistance, and (2) the section 504 requires Plaintiffs to demonstrate that Mr. Prakel was discriminated against solely on the basis of his disability. *Washington v. Indiana High Sch. Athletic Ass'n, Inc.*, 181 F.3d 840, 845 (7th Cir. 1999). There is no dispute that Defendants are recipients of federal financial assistance, as Defendants have admitted that they are recipients. (Ex. P, Def.'s Response to Motion to Compel [Docket No. 50] at pg. 1-2).

There can also be no genuine issues of material fact with respect to whether the discrimination was "solely by reason of disability."  Spectators who are not deaf or hard of hearing have access to and can understand everything that is said during court proceedings.  The *only* reason why Mr. Prakel could not understand court proceedings is because Defendants have a practice of refusing interpreters that resulted in the refusal to provide Mr. Prakel with the necessary auxiliary aids and services that would ensure effective communication with him in the courtroom and put him on equal footing with hearing spectators.  (Ex. N, Defendant's Amended Response to Plaintiff's Request for Admissions No. 15).  Likewise, the *only* reason Ms. Prakel is required to pay for her son to participate in proceedings is because her son is deaf.

For these reasons, this Court should declare that Defendants' refusal to provide the necessary auxiliary aids and services to ensure effective communication with Mr. Prakel violated section 504.

**C.      This Court Should Order Defendants To Reimburse Plaintiffs for the Cost of Interpreter Services**

The ADA and section 504 make clear that a covered entity may not force an individual with a disability to pay for the auxiliary aids and services that are necessary to ensure effective communication.  28 C.F.R. §§ 35.130(f), 35.160.  Plaintiffs seek reimbursement for the costs that they were forced to incur in paying for interpreter services when Defendant refused to provide the auxiliary aids and services.

The Supreme Court has held that reimbursement for expenses that a plaintiff paid for when the defendant should have paid for those expenses is a form of equitable relief.  *E.g.*, *School Comm. of Burlington v. Dept. of Educ.*, 471 U.S. 359, 370-71 (1985) (courts may order a defendant "to belatedly pay expenses that it should have paid all along" as a form of equitable relief); *see also Bowen v. Massachusetts*, 487 U.S. 879, 892-93 (1988) (holding that ordering the

18

federal government to reimburse a state for Medicare expenses that the federal government

should have paid was equitable relief).  Defendants saved money at Plaintiffs' expense by

passing on to them the cost of auxiliary aids and services in violation of the law.  *See* 28 C.F.R.

§§ 35.130(f), 35.160.  The funds that Defendants saved are traceable funds definite in amount

that belong to the Prakels and should be returned to the Prakels.  For this reason, this Court

should order Defendants to reimburse the Prakels for the $264.00 that the Prakels spent on

interpreter services for the two hearings in July 2010 when Defendant failed to provide

interpreters on those occasions.

### D.    Plaintiffs Are Entitled to Compensatory Damages Because Defendants Engaged in Intentional Discrimination

To obtain compensatory damages, Plaintiffs must make a further showing that

Defendants acted with intentional discrimination.  *See Love v. Westville Correctional Ctr.*, 103

F.3d 558, 561 (7th Cir. 1996).  Courts of appeal addressing intentional discrimination have held

that intent may be "inferred from a defendant's deliberate indifference to the strong likelihood

that pursuit of its questioned policies will likely result in a violation of federally protected

rights."  *Meagley v. City of Little Rock*, 639 F.3d 384, 389 (8th Cir. 2011); *Liese v. Indian River*

*Cnty. Hosp. Dist.*, 701 F.3d 334, 345 (11th Cir. 2012); *Loeffler v. Staten Island Univ. Hosp.*, 582

F.3d 268, 275 (2d Cir. 2009); *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138-39 & n.13 (9th

Cir. 2001); *Powers v. MJB Acquisition Corp.*, 184 F.3d 1147, 1153 (10th Cir. 1999); *Pandazides*

*v. Virginia Bd. of Educ.*, 13 F.3d 823, 830 n.9 (4th Cir. 1994).  Such demonstration of intent

"does not require a showing of personal ill will or animosity toward the disabled person."  *E.g.*,

*Meagley*, 639 F.3d at 389.  The Prakels therefore does not need to prove that Defendants acted

with animosity to obtain compensatory damages – they need prove only that Defendants

consciously chose not to provide the necessary auxiliary aids and services.

The "deliberate indifference" standard is a "rough parallel" to notice-and-opportunity requirements. *Liese*, 701 F.3d at 348 (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998)). The test is whether the covered entity's conduct was undertaken with deliberateness – whether Defendant had notice of the request for auxiliary aids and consciously chose not to provide the auxiliary aids necessary for effective communication. *See, e.g.*, *Loeffler*, 582 F.3d at 276 ("[D]eliberate indifference must be a deliberate choice rather than negligence or bureaucratic inaction") (quotation marks and ellipses omitted); *Duvall*, 260 F.3d at 1140 (holding that the "failure to act must be a result of conduct that is more than negligent, and involves an element of deliberateness"); *Proctor v. Prince George's Hosp. Ctr.*, 32 F. Supp. 2d 820, 829 (D. Md. 1998) (holding that there is deliberate indifference when a covered entity "willfully" withholds necessary auxiliary aids). Such willful conduct occurs when an individual with a disability requests auxiliary aids and such a request goes "unheeded." *Loeffler*, 582 F.3d at 276 (holding that there was deliberate indifference when a hospital ignored multiple requests for interpreters or a TTY).

In *Duvall v. County of Kitsap*, the Ninth Circuit held that once an individual with a disability makes a request for auxiliary aids and services, the covered entity has a "duty to gather sufficient information from the disabled individual and qualified experts as needed to determine what accommodations are necessary." 260 F.3d at 1139.  In *Duvall*, the court held that a deaf individual could demonstrate intentional discrimination when he called the county court to request a videotext display for his trial and the court "made a deliberate decision to deny [the plaintiff's] requests for a particular auxiliary aid and service without making any effort to determine whether it would have been possible to provide the requested accommodation." *Id.* at 1140.

In sum, Plaintiffs can establish deliberate indifference by demonstrating that Defendant (1) was on notice of his request for auxiliary aids; and (2) consciously chose to disregard his requests for necessary auxiliary aids. *See, e.g.*, *Liese*, 701 F.3d at 351-52; *Duvall*, 260 F.3d at 1137-40; *Proctor*, 32 F. Supp. 2d at 829.  Plaintiffs easily satisfy these two elements because, as Defendants have conceded, Mr. Prakel explicitly and repeatedly notified Defendants that he is a deaf individual, that he needed and was requesting that the courts provide interpreters, and that was unable to effectively participate in the proceedings against his mother.  (Ex. P, Def.'s Response to Motion to Compel [Docket No. 50] at pg. 3; Ex. M, Def.'s Responses to Plaintiffs' Requests for Admission Response Nos. 2-4, 9, 10, 12, 13, 14).  Plaintiffs notified the Defendants numerous times, in person and in writing, that he required an interpreter to understand the proceedings in his mother's trial.  As the Defendants also acknowledge, the Dearborn Circuit and Superior Courts refused this request.  Finally, Plaintiffs sent numerous requests for reimbursement and investigation of the refusal to provide interpreters that went ignored.  (Ex. M, Def.'s Responses to Plaintiffs' Requests for Admission No. 9-14).

As Defendant had notice of the Prakels' requests for interpreter services and intentionally opted not to provide such services, there are no genuine issues of material fact that Defendants acted with the requisite deliberate indifference such that the Prakels are entitled to seek compensatory damages.  This Court should order trial solely to determine the amount of compensatory damages.

## CONCLUSION

For the reasons stated in this memorandum, Plaintiffs are entitled to summary judgment with respect liability and to entry of an order declaring that spectators are entitled to access to the courts pursuant to Title II of the ADA and the section 504. Plaintiffs also seek equitable relief in

the form of reimbursement for the costs paid for interpreter services to access court proceedings ($264.00), compensatory damages in an amount to be determined at trial, and reasonable attorneys' fees and costs.

<div style="margin-left: 50%;">

Respectfully submitted
FOR THE PLAINTIFFS,


s/Mary C. Vargas
Mary Vargas
Michael Stein
Stein & Vargas, LLP
5100 Buckeystown Pike
Suite 250
Frederick, MD 21704
Tel: (240) 793-3185
Fax: (888) 778-4620
Mary.Vargas@steinvargas.com
Michael.Stein@steinvargas.com

Matthew Lorch
Lorch Law Office LLC
223 E. Spring Street
New Albany, IN 47150
Tel: (812) 949-2111
Fax: (502) 805-0482
Matthew@lorchlaw.com

Debra Patkin
National Association of the Deaf
Law and Advocacy Center
8630 Fenton Street, Suite 820
Silver Spring, MD 20910
Tel: (301) 587-1788
Fax: (301) 587-1791
debra.patkin@nad.org

*Counsel for Plaintiffs*[3]

</div>

---

[3] Counsel for the Plaintiffs thank National Association of the Deaf law interns, Caleb Karpay and Allan Thorson, for their contributions to this brief.

**CERTIFICATE OF SERVICE**

I hereby certify that on October 9, 2013, a copy of the foregoing was filed electronically.

Notice of this filing will be sent to all parties by operation of the Court's electronic filing

system.  Parties may access this filing through the Court's system.


<u>s/Mary C. Vargas</u>