**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**NEW ALBANY DIVISION**

| | |
|---|---|
| **STEVEN PRAKEL et al.,** )| |
| ) | |
| **Plaintiffs,** ) | |
| ) | **CAUSE NO: 4:12-cv-45-SEB-WGH** |
| **v.** ) | |
| ) | |
| **STATE OF INDIANA, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

<u>**DEFENDANTS' MEMORANDUM IN SUPPORT OF**</u>
<u>**MOTION FOR SUMMARY JUDGMENT**</u>

The Defendants, the Hon. Chief Justice Brent Dickson, the Hon. James D. Humphrey, the

Hon. Jonathan Cleary, the Hon. Kimberly A. Schmaltz, the Division of State Court

Administration and the State of Indiana, by counsel, pursuant to Fed. R. Civ. P. 56, hereby move

this Court for an order granting summary judgment with respect to all issues in this cause.

**I.      INTRODUCTION**

This case involves a claim for reimbursement of sign language interpreter expenses by

Carolyn Prakel and Steven Prakel.  In their Complaint, Plaintiffs' prayer for relief states that they

ask for judgment:  "to reimburse Ms. Prakel for the interpreter expenses she incurred to enable

her son to access the aural content of her court proceedings; to award compensatory damages to

Plaintiffs; to award Plaintiffs [sic] attorneys' fees and costs; to award Plaintiffs any and all other

relief as available and may be necessary and appropriate."  Exh. A, Complaint [Dkt. 1], p. 15.

Plaintiffs did not seek any type of declaratory and injunctive relief.  Plaintiffs did not attempt to

make this case a class action.  Plaintiffs did not name every court in the State of Indiana.

However, in their motion for summary judgment, Plaintiffs now, for the first time, request a

declaration that "Defendants are required to provide auxiliary aids and services to ensure that

deaf spectators receive the benefits of effective participation in court proceedings" in addition to compensatory damages and attorney fees.  Plaintiffs' Brief [Dkt. 65] [Pl.Br.], pp. 1-2, 21-22.

Contrary to the allegations of their Complaint, Plaintiffs now seek to use this case as a vehicle for some broad pronouncement about the rights of deaf spectators in connection with court proceedings.  Starkly different defenses and evidence would be required to render such a broad determination.  It is one thing to make a determination that the courts should pay for approximately three hundred dollars in interpreter expenses for one individual in two Dearborn County courts, and quite another to declare that all deaf spectators in every court in Indiana are entitled to sign interpreters.  While Defendants have not advanced the defenses of undue burden and fundamental alteration in connection with the limited request made by Steven Prakel, requiring interpreters for spectators for all court proceedings throughout the State of Indiana would involve vastly different proof and considerations.  Thus, the Defendants ask that the Court limit its findings to the facts of this case and the claims and relief requested by Plaintiffs in their Complaint.  Otherwise, discovery would need to be reopened to permit Defendants to gather evidence from all state courts as well as county governments concerning the impact of such a requirement on individual courts.  The Court should reject Plaintiffs' invitation to expand the scope of this lawsuit.  This case involves only one claim – the Prakels' request to recover the interpreter expenses they incurred to provide Steven Prakel with a sign interpreter in court proceedings relating to his mother.  Damages and attorney fees are the only relief requested by Plaintiffs.

## II.     STATEMENT OF FACTS NOT IN DISPUTE

The Defendants in this case are two Dearborn County Judges, a Dearborn County Magistrate, the Indiana Supreme Court Chief Justice, the Indiana Division of State Court

Administration (the "Division") and the State of Indiana.  The Hon. James D. Humphrey is the

judge of the Dearborn Circuit Court and the Hon. Jonathan Cleary is Judge of the Dearborn

Superior Court No. 1.  Kimberly Schmaltz is a Dearborn County magistrate.  All of the judicial

officers in this case are named in their official capacities.  *See* Complaint [Dkt. 1], ¶ 1.  Thus, this

case involves a claim for money damages against four judicial defendants, the Division and the

State of Indiana.

       A.  **The judicial proceedings**

       Carolyn Prakel has been involved in several criminal matters.  Specifically, Ms. Prakel

had previously pled guilty in Dearborn Circuit Court to driving while intoxicated causing serious

bodily injury and as part of her sentence had her driver's license suspended for five years.  Exh.

E, Deposition of Hon. James D. Humphrey [Humphrey Dep.], pp. 12-13.  Subsequently, in 2010,

while still on probation, Ms. Prakel was stopped by the police for driving with a suspended

license.  Exh. E, Humphrey Dep., p. 13.  Ms. Prakel was consequently required to appear in

Dearborn Circuit Court for probation revocation proceedings and in Dearborn Superior Court

No. 1 on a charge of operating while suspended.  Exh. E, Humphrey Dep. pp. 13-14; Exh. C,

Deposition of Hon. Jonathan N. Cleary [Cleary Dep.], p. 8.  The probation revocation and

misdemeanor proceedings are the ones about which Plaintiffs complain.  The Court proceedings

involved Ms. Prakel, her counsel, Timothy Day, the prosecutor, and Judges Humphrey, Cleary

and Schmaltz.

       Steven Prakel is the adult son of Carolyn Prakel and is deaf.  Prior to 2010 and 2011,

when Steven Prakel was to be a witness in Carolyn Prakel's legal proceedings, a sign language

interpreter was provided for him by the Dearborn Circuit Court at the Court's expense.  Exh. E,

Humphrey Dep., pp. 12-13.  In 2010 and 2011, Steven Prakel requested that he be provided with

an interpreter for the revocation and misdemeanor matters then being considered by the two

Courts.  Carolyn Prakel was represented in the proceedings in both courts by attorney Timothy

Day (now Hon. Judge Day).  Exh. J, Day Aff., ¶¶ 4, 6.

### 1.  Dearborn Superior Court No. 1

In Dearborn Superior Court No. 1, Steven Prakel complains about a court date on April

29, 2010.  However, the only thing occurring on that date was a pretrial.  See Exhibit B,

Dearborn Superior Court Chronological Case Summary for Cause Number 15D01-1004-CM-

00131, p. 2.  At some point, Steven Prakel contacted Dearborn Superior Court No. 1 to request a

sign interpreter.  At the behest of the Court, Steven Prakel submitted a written request for an

interpreter which Judge Cleary set for hearing.  Exh. B, Superior CCS, p. 2; Exh. C, Cleary Dep.,

pp. 13-15.  The hearing was scheduled for June 23, 2010.  Exh. B, Superior CCS, p. 2.  Judge

Cleary asked Mr. Day about the need for an interpreter.  Exh. C, Cleary Dep. pp. 8-10; Exh. J,

Day Aff. ¶¶ 13, 14.  Steven Prakel did not appear at the hearing.  Exh.J, Day Aff. ¶ 15.  At that

hearing and with Carolyn Prakel by his side, Day told Judge Cleary that an interpreter was not

necessary for Mr. Prakel because he was not a witness or participant in the proceeding.  Exh. J,

Day Aff., ¶¶ 15, 16.  Carolyn Prakel did not make any objection to Mr. Day's statement.  Exh. J,

Day Aff. ¶ 17, 18.  While Mr. Prakel was present in the courthouse that day, he did not appear in

the courtroom.  Exh. C, Cleary Dep. pp. 9, 12-13.  Exh. F, Hearing Transcript, p. 3.  However,

Carolyn Prakel was present in court along with her attorney, Timothy Day.  Exh. C, Cleary Dep.

p. 8; Exh. F, Hearing Transcript.  Attorney Day advised Judge Cleary that no interpreter was

needed and that Steven Prakel would not be participating in the proceedings and need not be

present.  Exh. C, Cleary Dep. p. 10; Exh. F, Transcript, p. 3.[1]  On April 19, 2011, there was again

---

[1] Attorney Day made a similar statement to Judge Humphrey of Dearborn Circuit Court.  Exh. E, Humphrey Dep., pp. 16-17.

an informal conference in Superior Court No. 1 at which a guilty plea and sentencing order were submitted.  Exh. B, Superior Court CCS, pp. 2-3; Exh. C, Cleary Dep. pp. 9, 13.

### 2. Dearborn Circuit Court

Judge Humphrey presided over the probation revocation proceedings.  After Mr. Prakel made a request for an interpreter, Judge Humphrey contacted Mr. Day by telephone to inquire about the need for a sign interpreter.  Exh. E, Humphrey Dep. p. 17; Exh. J, Day Aff. ¶ 8.  Judge Humphrey also contacted the Division of State Court Administration about the request.  Exh. E, Humphrey Dep. p. 16.  Mr. Day told Judge Humphrey that an interpreter was not necessary because Steven Prakel was not scheduled to be a witness or participate in those proceedings.[2] Exh. J, Day Aff. ¶ 10; Exh. E. Humphrey Dep. pp. 17.  Carolyn Prakel never objected or indicated that an interpreter was needed for those court appearances.  Exh.J, Day Aff., ¶ 12.  Carolyn Prakel never requested that an interpreter be made available for Mr. Prakel.  Exh. J, Day Aff., ¶ 18.  Steven Prakel never requested that Mr. Day make a request for a sign interpreter.  Exh.J, Day Aff. ¶ 19.  After consultation with Mr. Day and the Division, Judge Humphrey denied the request.  Exh. E, Humphrey Dep. p. 36.

On June 30, 2011, there was a fact-finding hearing on the probation revocation charge and Ms. Prakel entered an admission.  With respect to Dearborn Circuit Court, the Prakels complain about the sentencing hearing which followed on July 6, 2011.  Exh. D, Dearborn Circuit Court Chronological Case Summary [Circuit CCS], p. 9.  These proceedings involved the Court, the prosecutor, counsel for Ms. Prakel and Ms. Prakel.  Exh. G, Defendants' Response to Request for Admissions, No. 5.  Ms. Prakel paid for a sign interpreter to be present at the Circuit Court proceedings.  Exh. G, Defendants' Response to RFA, No. 5.

---

[2] In a previous hearing in Circuit Court, in 2009, when Steven Prakel was to be a witness, the Court retained and paid for an interpreter.  Exh. E, Humphrey Dep. p. 13.

B.  **National Association for the Deaf letters**

Subsequently, following the Superior and Circuit Court proceedings, Steven Prakel

apparently contacted the National Association for the Deaf [NAD].  The NAD sent letters to

Judge Humphrey on November 9, 2010, and to the Indiana Supreme Court Chief Justice on April

22, 2011.  In those letters, the NAD requested that Carolyn Prakel be reimbursed for the funds

she expended to hire an interpreter.  Exh. K, NAD Letter to Judge Humphrey of 11/9/2010; Exh.

L, NAD Letter to Chief Justice of the Indiana Supreme Court of 4/22/2011.  After receiving the

letter, Judge Humphrey again contacted the Division.  Exh. E, Humphrey Dep. p. 24.  Neither

Judge Humphrey nor the Chief Justice made any written response to the demands.  Exh. G,

Responses to RFA, No. 14; Exh. E, Humphrey Dep. p. 32.

C.  **The Indiana Court System**

The State of Indiana does not have a unified court system.  Instead, the Indiana state

courts consist of separately elected judicial officers in each county which are provided for by

Article 7 Section 7 of the Indiana Constitution.[3]  *See also,* Exh. I, 30(b)(6) Deposition of

Division of State Court Administration [Remondini Dep.] pp. 9, 62.  Specifically, the Dearborn

Circuit and Superior Courts are established under the Indiana Constitution and the Indiana Code.

Ind. Const. Art. 7, § 7; Ind. Code § 33-33-15-2; Ind. Code § 33-29-1.  The powers of the

Dearborn Circuit and Superior Courts are also established by statute. Ind. Code § 33-28-1-5; Ind.

Code § 33-29-5-3.  Although the judges' salaries are paid for out of state funds and the rate of

pay is established by statute,[4] the state courts' operating expenses including staff and other

expenses are paid for by the individual counties in which the courts sit.  Ind. Code § 33-33-82-29

---

[3] However, there are several county level state courts in which the judges go through a selection process rather than being elected and the Governor can appoint people to fill vacancies on the bench.

[4] Counties can provide an additional stipend to their judges, which is typically a relatively small percentage of the judges' pay.

(budgets submitted to county auditor for approval by the county council). The courts, in conjunction with county officials, develop and administer their own budgets each year and set their own policies. Exh. E, Humphrey Dep. p. 6-7. The Indiana Supreme Court and the Division do not play any role in the day-to-day operations or governance of the individual county courts. *See* Ind. Const. Art. 7 §§ 1, 4, 7; Ind. Code § 33-24-1, 3, 6; Ind. Code § 33-33-25. The Indiana Court of Appeals and the Indiana Supreme Court do, however, provide appellate review of trial court judges' rulings.

The Indiana Supreme Court has several entities that operate under its supervision. One such entity is the Division of State Court Administration. Exh. I, Remondini Dep. pp. 7-8. The Division's primary functions are to serve as paymaster for judges and prosecutors and to provide support services and consultation to trial court judges. Exh. I, Remondini Dep. p. 8. The Division serves as a resource to Indiana state court judges but does not direct the state courts' activities. Exh. I, Remondini Dep. pp. 9, 62. By statute, the Division examines business and administrative methods and systems of the courts; collects and compiles statistical data on the courts; prepares reports on judicial work; assists the judicial nominating commission and the judicial qualifications commission; administers the civil legal aid fund; administers the judicial technology project and other technology activities; and, a variety of other related responsibilities. Ind. Code 33-24-6-3; Exh. I, Remondini Dep. p. 8.

The Indiana Supreme Court also provides some funding to the trial courts through grants for specific projects and programs. Exh. I, Remondini Dep. pp. 16, 64-65. Some examples include provision of grants for improvements in technology for the trial courts and funding for special projects such as assistance to provide interpreters for litigants with limited English proficiency. The Supreme Court has not received federal grants for provision of interpreter

services in any recent few years.  Exh. I, Remondini Dep. p. 66.  The Supreme Court receives

federal funding which is distributed by the Division for use by drug courts, for domestic violence

training, for tracking CDL violations and for child support enforcement.  The trial courts are

required to collect certain data, such as statistics concerning case filings and other case and

caseload information and report that information to the Division on an annual basis.  However,

neither the Division nor the Supreme Court direct the day-to-day activities of individual trial

courts, their budgets or expenditures, or how they conduct a given proceeding (other than in the

appellate courts' capacity as reviewing courts).  The Division makes no decisions concerning

provision of interpreters or expenditures of money for interpreters.  The Division does not have

authority to order a trial court to provide interpreter services.  Exh. I, Remondini Dep. pp,.69-70.

Those decisions reside solely with the trial court judges.  Exh. I, Remondini Dep., p. 69.

### III.    DISPUTED ISSUES OF FACT

Plaintiffs set out a long narrative of matters which they refer to as facts and while

Defendants agree with many of those facts, there are some which Defendants dispute.  The

disputed statements are as follows:

A.  **Statement:**  Had Mr. Prakel been a hearing individual, he would have been permitted to
attend these proceedings free of charge.  Pl.Br. p. 3.

**Dispute:**  Mr. Prakel was permitted to attend court proceedings free of charge.  The Court
also does not provide interpreters for spectators of limited English proficiency.  Exh. E,
Humphrey Dep. pp. 33-34.

B.  **Statement:**  The Indiana Supreme Court and Division of State Court Administration are
state entities charged with oversight of the Indiana court system.  Pl.Br. p. 3.

**Dispute:**  The Indiana Supreme Court and the Division are entities established by state law.
The role of the Indiana Supreme Court includes oversight of "admission to the practice of
law; discipline or disbarment of those admitted; the unauthorized practice of law; discipline,
removal and retirement of justices and judges; supervision of the exercise of jurisdiction by
the other courts of the State; and issuance of writs necessary or appropriate in aid of its

8

jurisdiction… [as well as] appellate jurisdiction." Ind. Const. Article 7, § 4.Indiana trial courts are headed by the judges elected or appointed to those courts.  Ind. Const. Article 7, § 7.  The Division of State Court Administration serves as a resource for state trial courts and gathers data from them but does not direct the operations or activities of those courts.  Exh. I, Remondini Dep. pp. 69-70.

C. **Statement:**  The State Defendants pay the salaries and benefits of the county judges, manage the program that provides interpreters in the county courts, advise the county judges on their legal obligations and the policies and procedures of the state court administration, train the judges on the requirements of law, provide language line access for individuals with limited English proficiency, implement consent decrees such as a consent decree requiring the provision of sign language interpreters in court proceedings, provide funding to county courts for language access, including interpreters in all trial courts, communicate state court policies to the county courts and refer for investigation by the Judicial Commission.  Pl.Br. pp. 3-4.

**Dispute:**  The Defendants deny that all of the State Defendants (i.e., Chief Justice Brent E. Dickson, the Division of State Court Administration, and the State) pay the salaries and benefits of the trial court judges.  The trial court judges' salaries are paid for out of state funds and the rate of pay is established by statute and the state courts' operating expenses including staff and other expenses are paid for by the individual counties in which the courts sit.  Ind. Code § 33-33-82-29.  The State Defendants do not advise the county judges on their legal obligations and the policies and procedures of the Division of State Court Administration.  Exh. I, Remondini Dep. pp. 55.  Rather, State Court Administration serves as a resource to county judges from which they can seek advice or input upon request.  Exh. I, Remondini Dep., pp. 9-10.  The Division of State Court Administration does not set policies and procedures for county judges other than managing a data system to track court caseloads and related information.    Exh.I, , Remondini Dep., pp. 9-10, 55; Ind. Code 33-24-6-3.  The State Defendants provide little or no training to county courts.  Exh. I, Remondini Dep. pp. 21, 25.  A separate entity, the Indiana Judicial Center, provides training for trial court judges.  Exh. I, Remondini Dep. pp. 21-22, 28.  The State Defendants have not implemented any consent decrees relating to provision of sign language interpreters in court proceedings.[5]  Exh.I , Remondini Dep. pp. 43-44.  The Supreme Court, through the Division of State Court Administration, does provide grants to some courts for purposes of providing interpreters for court proceedings but does not provide grants to all county courts.  Exh. I, Remondini Dep. pp. 15-16.   The Division of State Court Administration or, for that matter, any other person or entitiy in the state, can refer matters for investigation by the Judicial Qualifications Commission.  The only testimony in this case is that while it could possibly do so, the Division of State Court Administration has not referred anyone to the Commission.  Exh.I, Remondini Dep. p.14.  The Division does not set rules or procedures for trial courts regarding provision of interpreters.  Exh. I, Remondini Dep. pp. 54-55.

---

[5] The *Clark* consent decree to which Plaintiffs refer does not require any action by the Division or by any courts other than the specific court involved in that one specific proceeding.

D. **Statement:**  The named judges who denied the Prakels equal access to the courts are employed by the State and are subject to the policies of the Division of State Court Administration and the Supreme Court of Indiana.  Pl.Br. p. 4.

**Dispute:**  The named judges are not State employees.  Ind. Const. Art. 7, § 7; Ind. Code § 33-33-15-2; Ind. Code § 33-29-1.  The powers of the Dearborn Circuit and Superior Courts are established by statute. Ind. Code § 33-28-1-5; Ind. Code § 33-29-5-3.  While the judges' salaries are paid for out of state funds and the rate of pay is established by statute, the state courts' operating expenses including staff and other expenses are paid for by the individual counties in which the courts sit. Ind. Code § 33-33-82-29; Exh. I, Remondini Dep. p. 21 (salaries are paid by taxpayers through the State General Fund).  The Judges are independently elected officials whose salaries are paid by state funds administered by the Indiana Supreme Court and the Division of State Court Administration.  Exh. I, Remondini Dep. pp. 8-9.  While the trial courts are subject to some reporting requirements, they are run autonomously rather than under the supervision of the Supreme Court or State Court Administration.  Exh. I, Remondini Dep. p. 9.  Trial court judges set their own policies regarding provision of sign interpreters.  Exh. I, Remondini Dep. pp. 37-38.

E. **Statement:**  Defendant judges presided over the proceedings involving Ms. Prakel and received and denied Mr. Prakel's requests for interpreters.  Pl.Br. p. 4.

**Dispute:**  Judges Humphrey, Cleary and Schmaltz presided over some proceedings involving Ms. Prakel.  Judge Humphrey denied requests for an interpreter for Mr. Prakel in the probation revocation proceedings where his only role would be as a spectator.  Judge Cleary set a hearing for the purpose of determining whether an interpreter should be provided to Mr. Prakel for the proceedings in Dearborn Superior Court No. 1.  Exh. B, Superior CCS, p. 2; Exh. C, Cleary Dep., pp. 13-15.  The hearing was scheduled for June 23, 2010.  Exh. B, Superior CCS, p. 2.  While Mr. Prakel was present in the courthouse, he did not appear in the courtroom.  Exh. C, Cleary Dep. pp. 9, 12-13.  At the scheduled hearing, counsel for Ms. Prakel advised the Court that an interpreter was not necessary. Exh. C, Cleary Dep. p. 10; Exh. F, Transcript, p. 3.

F. **Statement:**  In addition to being paid by the State, they [Defendant judges] are bound by the State's policies and Defendants have admitted that the Dearborn courts are state entities. Pl.Br. p. 4.

**Dispute:**  This statement is too vague to form a meaningful response because Plaintiffs fail to identify to what policies they refer.  The trial courts are state entities because they are created by state statute.  The Judges' activities and duties are defined by Indiana law.  Ind. Code § 33-28-1-5; Ind. Code § 33-29-5-3.  The trial court judges are not bound by any state policies other than those imposed by law and certain reporting requirements regarding caseloads and other data.  Exh. I, Remondini Dep. pp. 8-12 (reporting requirements).  While the Dearborn courts are state entities, they are separately created entities created by the

Indiana Constitution and the Indiana legislature.  Ind. Const. Art. 7, § 7; Ind. Code § 33-33-15-2; Ind. Code § 33-29-1; Ind. Code § 33-28-1-5; Ind. Code § 33-29-5-3.

G.  **Statement:**  Furthermore, Judge Humphrey, who presided over some of the proceedings at issue, acted upon the advice and consent of the Division of State Court Administration in repeatedly contacting Brenda Rodeheffer at the Division of State Court Administration about Mr. Prakel's requests for interpreters and then again about his requests for reimbursement. Pl.Br. p. 4.

**Dispute:**  There is no evidence concerning what advice Judge Humphrey received or whether he acted on any such advice.  Further, as the Division of State Court Administation clearly testified in a 30(b)(6) deposition, the county court judges do not need the consent of the Division of State Court Administration for their activities.  Exh. I, Remondini Dep., pp. 69-70.  The judges are independently elected officials and the Division, rather than directing their actions, serves as a resource for any requests or assistance needed by those courts. Further, Judge Humphrey testified he contacted Brenda Rodeheffer at State Court Administration on two occasions with respect to Mr. Prakel and his requests, not "repeatedly" as claimed by Plaintiffs.  Exh. E, Humphrey Dep. pp. 16, 22.

H.  **Statement:**  Defendants have long been on notice that the failure to provide interpreter services for deaf individuals in the courtroom violates the ADA and section 504 [sic].  In a 1994 Consent Decree filed in the Southern District of Indiana, the State of Indiana agreed to provide qualified sign language interpreters, at no cost, to a deaf individual appearing in court.  Pl.Br. p. 5.

**Dispute:**  Plaintiffs cite no relevant record evidence to support their statement that Defendants have "long been on notice" regarding any purported requirement to provide interpreters for deaf spectators.  Further, the Consent Decree to which Plaintiffs refer merely agreed to provide a sign interpreter to one deaf litigant in one small claims court matter.  See Exh. H, *Clark v. Bridges* Consent Decree.  That 'consent decree' did not make any declaration or any findings concerning possible provision of interpreters in other proceedings or under other circumstances.

I.  **Statement:**  For those hearings, Mr. Prakel needed and requested that Defendants provide qualified sign language interpreters.  Pl.Br. p. 6.

**Dispute:**  No request was made to any Defendants other than Judges Humphrey and Cleary and the evidence reflects that counsel for Ms. Prakel advised the Court that an interpreter was not necessary.

J.  **Statement:**  Mr. Prakel appeared at the hearing only to discover that Defendants had failed to provide interpreters.  Pl.Br. p. 6.

11

**Dispute:**  Mr. Prakel did not appear at the hearing.  Exh. C, Cleary Dep. pp. 9, 12-13.  At the scheduled hearing, counsel for Ms. Prakel advised the Court that an interpreter was not necessary. Exh. C, Cleary Dep. p. 10; Exh. F, Transcript, p. 3.

K.  **Statement:**  However, no interpreter was provided for Mr. Prakel at this hearing.  Judge Cleary denied Mr. Prakel's request for an interpreter.  Pl.Br. p. 7.

**Dispute:**  Mr. Prakel did not appear at the hearing and counsel for Ms. Prakel advised Judge Cleary that an interpreter was not needed.  Exh. C, Cleary Dep. pp. 9-10, 12-13; Exh. F, Transcript, p. 3.

L.  **Statement:**  Judge Humphrey, acting upon the advice of his employer, the Division of State Court Administration, decided not to provide an interpreter for Mr. Prakel.  Pl.Br. p. 8.

**Dispute:**  There is no evidence concerning what, if any, advice Judge Humphrey received or whether he acted upon any such advice.  Further, as has been stated several times above, the Division of State Court Administration is not the employer of Judge Humphrey.  All trial court judges are independently elected officials who run their own courts as they see fit. Exh. I, Remondini Dep. p. 62.

## IV.   ARGUMENT

### 1.  Summary Judgment Standard

A motion for summary judgment must be granted when the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.  Under this standard, the "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986) (emphasis added).  Material facts are identified by the underlying substantive law, and "[o]nly disputes over facts that might affect

the outcome of the suit under the governing law will properly preclude the entry of summary

judgment." *Id.* at 248.

## 2. Plaintiffs have presented no case or controversy involving the State Defendants because they lack standing.

Neither Carolyn nor Steven Prakel have standing to pursue this claim.  Subject matter

jurisdiction is the threshold that all plaintiffs must cross.  It is a fundamental principle that under

Article III of the Constitution, judicial power extends only to matters presenting a "case or

controversy."  *See, e.g., Chafin v. Chafin*, 133 S. Ct. 1017, 1023 (2013) (noting that the case or

controversy requirement must be satisfied throughout judicial proceedings); *Raines v. Byrd*, 521

U.S. 811, 818 (1997) (describing case or controversy as a "bedrock requirement").  Article III

states:

> The judicial power shall extend to all Cases, in Law and Equity, arising under this
> Constitution, the Laws of the United States, and Treaties made, or which shall be made,
> under their Authority;--to all Cases affecting Ambassadors, other public Ministers and
> Consuls;--to all Cases of admiralty and maritime Jurisdiction;--to Controversies to which
> the United States shall be a Party;--to Controversies between two or more States;--
> between a State and Citizens of another State;--between Citizens of different States;--
> between Citizens of the same State claiming Lands under Grants of different States, and
> between a State, or the Citizens thereof, and foreign States, Citizens or Subjects.

U.S. Const. art. III, § 2, cl. 1.

A plaintiff seeking to invoke an Article III court's jurisdiction has the burden of

demonstrating that it has met the case or controversy requirement. *Michigan v. E.P.A.*, 581 F.3d

524, 528 (7th Cir. 2009).  Standing has three requirements that constitute the "irreducible

constitutional minimum" that plaintiffs must meet.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555,

560 (1992).  First, the plaintiff must have suffered or be about to suffer an "injury in fact," which

is "an invasion of a legally protected interest" that is concrete and particularized.  *Id.*  Second,

"there must be a causal connection" between the injury and conduct about which the plaintiff is

complaining.  *Id.*  Third, it must be likely and not merely speculative that the injury will be

redressed by a favorable decision.  *Id.*  The Prakels' allegations fail to reach this irreducible minimum.

With regard to the Prakels' request, made for the first time in their brief, that the court "declare that Defendants are required to provide auxiliary aids and services to ensure that deaf spectators receive the benefits of effective participation in court proceedings," the Prakels lack standing.  "Courts have held that a plaintiff lacks standing to seek injunctive relief unless he alleges facts giving rise to an inference that he will suffer future discrimination by the defendant."  *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001).  In *Shotz*, two physically disabled persons sought injunctive relief against the county, a judge and a sheriff to require that the courthouse building comply with the ADA.  *Id.* at 1079.  The chief complaints about the courthouse were that the wheelchair ramps were twice as steep as required by the ADA and the bathroom stalls had insufficient floor space.  *Id.*  The Court ultimately held that because "the plaintiffs have not attempted to return [to the courthouse], nor have they alleged that they intend to do so in the future," they lacked standing.  *Id.* at 1082.  Therefore, the Court stated, "the likelihood of future discrimination remains "conjectural, hypothetical, or contingent," and not "real and immediate.""  *Id.* (citations omitted).  Similarly the Prakels lack standing here with respect to any prospective relief, because they have not alleged that they have attempted or intend to return to the Dearborn courts.[6]

In *Brunk v. Utschig,* 2012 W.L. 6586485 (W.D. Wis. December 17, 2012), the Plaintiff was the son of the debtor in a bankruptcy matter.  Adversary proceedings were pending in the bankruptcy.  At one stage of those proceedings, the bankruptcy judge conducted a telephonic hearing concerning a stay which effectively froze the father's assets.  The debtor's son (who was not a party to the bankruptcy) had a sixty percent hearing loss.  The father's attorney requested

---

[6] The complaint does not request any prospective relief; it requests only damages.

that the hearing take place in court so that the son could hear.  The request was denied.  The son

claimed that this denial constituted a denial of due process and violated the Americans with

Disabilities Act [ADA] and filed suit against the judge and trustee.  The district court concluded

that the son did not have standing because he had no pecuniary interest in the outcome.  *Id.* *4.

The court indicated that Plaintiff's claim that he was a family representative did not persuade the

court to find that he had standing.  The Court noted that the son did not appear in the bankruptcy

case or seek any relief from the court's ruling and that the lack of harm to the son was "fatal to

his claim."  In rejecting Plaintiff's claim, the Court noted that Plaintiff did not advise the

bankruptcy court of any special circumstances warranting an interpreter.  The Court held that the

son did not have an ADA claim and also noted that the judge had absolute immunity from

Plaintiff's claim.

Like the son in *Bronk*, Steven Prakel lacks standing to pursue his claim against the

Defendants.  Because she has sustained no injury, Carolyn Prakel also lacks standing.  Without

standing, this action cannot continue and the Defendants are entitled to summary judgment on

Plaintiffs' claims.

**3.  All Defendants possess Eleventh Amendment immunity to Plaintiffs' ADA claims.**

Plaintiffs seek money damages in this case in the form of reimbursement for money spent

by Carolyn Prakel to hire a sign interpreter for Steven Prakel for one proceeding (two court

appearance) in the Dearborn Courts.  Plaintiffs also seek other unspecified damages.  However,

Plaintiffs' ADA claim fails because Defendants possess Eleventh Amendment immunity for that

claim.

The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial

power of the United States shall not be construed to extend to any suit in law or equity,

commenced or prosecuted against one of the United States by Citizens of another State, or by

Citizens or Subjects of any Foreign State." *Bd. of Trustees of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) (ADA Title I is not a valid abrogation).[7][8]  Eleventh Amendment immunity extends not only to the state, but also to suits in federal court against a state, state agency, or state official in their official capacity. *Gossmeyer v. McDonald,* 128 F.3d 481, 487 (7th Cir. 1997); *Scott v. O'Grady*, 975 F.2d 366, 369 (7th Cir. 1992).  Plaintiffs have sued the State, the Division, the Hon. Chief Justice Dickson, Hon. Judges Humphrey, Cleary and Schmaltz, in their official capacities.

"An exception to [Eleventh Amendment immunity for state actors] is an official-capacity suit for prospective injunctive relief: a suit 'to enjoin as unconstitutional a state official's action is not barred by the Amendment.'" *Scott v. O'Grady*, 975 F.2d 366, 369 (7th Cir. Ill. 1992) (quoting *Papasan v. Allain*, 478 U.S. 265, 276 (U.S. 1986)); *see also Ex parte Young*, 209 U.S. 123, 159-60 (1908).  However, Plaintiffs have not sought prospective injunctive relief against the named individuals in this case.

In *Tennessee v. Lane*, 541 U.S. 509, 124 S. Ct. 1978 (2004), the Supreme Court held that Title II validly abrogated Eleventh Amendment immunity in terms of court accessibility.  The Court noted abrogation in that case extended to the ability to be heard.  The Court did not address whether there was a valid abrogation with respect to spectators.  Then, in *United States v. Georgia,* 546 U.S. 141, 126 S. Ct. 877 (2006), the Court again considered whether states have Eleventh Amendment immunity for ADA Title II claims.  In *Georgia*, the Court held that Title II was a valid abrogation to the extent that the challenged conduct *actually violates* the Fourteenth

---

[7] Section Five confers upon Congress the power to "enforce, by appropriate legislation, the provisions of this article" (U.S. Const. Amend. XIV, § 5).

[8] Furthermore, for a law to be suitable Section Five legislation, "[t]here must be a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end."  *City of Boerne v. Flores*, 521 U.S. 507, 517-19 (1997); *Kimel v. Fla. Bd. of Regents et al,* 528 U.S. 62, 66-67 (2000),

Amendment.  The Court held in that case that lower courts must consider on a case-by-case basis whether there was a valid abrogation of the particular challenged conduct.  *Id.* at 159.

Pursuant to *Tennessee* and *Georgia,* courts must address the issue of abrogation under Title II on a case-by-case basis.  While the Court in *Tennessee* recognized abrogation under the specific facts of that case, whether there has been abrogation in the case of court spectators is still an open issue.[9]  In the present action, Steven Prakel was not a party to the criminal proceedings and Carolyn Prakel suffered no harm as a result of Steven Prakel's inability to hear the proceedings.  Here, with no direct interest in the proceedings and no harm, this Court should recognize that sovereign immunity has not been abrogated and should grant summary judgment on Plaintiffs' ADA claim.

### 4.  The Judicial Defendants and the Division of State Court Administration have judicial immunity from suit.

Of the six Defendants in this action, four are either a justice or judge, another is an arm of the Indiana Supreme Court (the Division) and the sixth is the State.  The only non-judicial Defendant is the State of Indiana.  In federal proceedings, judges are protected by common law immunity from suits brought on the basis of judicial acts.  *Stump v. Sparkman*, 435 U.S. 349, 98 S. Ct. 1099 (1978).  Pursuant to controlling legal principles, the Indiana Judges are entitled to absolute immunity for the actions and rulings attributed to them.  *Mireles v. Waco,* 502 U.S. 9, 11, 112 S. Ct. 286 (1991).  This immunity exists even where the action taken by the judge "was in error, was done maliciously or was in excess of his authority."  *Stump v. Sparkman,* 435 U.S. at 356-57.

---

[9] In *Zabriskie v. Court Admin.,* 172 Fed. Appx. 906 (11th Cir. 2006), the Eleventh Circuit considered a claim by a *pro se* litigant who had been denied access to a self-help center set up for *pro se* litigants because of his conduct. The Court held that the Plaintiff's due process rights had not been violated because he could obtain access to the same information from other sources.

The Supreme Court has used a functional approach to determine whether an individual is entitled to absolute immunity.  The existence of absolute immunity depends upon the nature of the functions performed by the official and the effect exposure to liability would have on the appropriate exercise of those functions.  *See Forrester v. White,* 484 U.S. 219, 224, 108 S. Ct. 538 (1978).  *Cleavinger v. Saxner,* 474 U.S. 193, 201, 106 S. Ct. 496 (1985).  Provision of immunity is designed to prevent situations in which decision-makers act with excessive caution or skew their decisions resulting in less than full commitment to the goals and independent criteria that ought to guide their conduct because of a fear of litigation or personal monetary liability.  *Tobin for Governor v. Ill. State Bd. of Elections,* 268 F.3d 517, 522 (7th Cir.2001).

Judicial immunity can be overcome in only two circumstances: (1) when the actions were not taken in the judge's official capacity (i.e., were non-judicial acts); or (2) if the action is taken with complete lack of jurisdiction. *Mireles*, 502 U.S. at 11-12.   Neither of these is the case here. As stated above, Plaintiffs' allegations are based upon judicial acts by the Indiana Judges serving in their capacity as judges, and, therefore, the Indiana Judges are immune from liability for the claims of the Plaintiffs.  This far-sweeping immunity has been applied to cases involving allegations of violation of the ADA and the Rehabilitation Act.  Specifically and by way of example, in two cases relied upon by Plaintiffs, the Court found that judicial immunity precluded relief in the case of a judge's refusal to provide a sign interpreter.  *See, e.g., Rafford v. Snohomish County*, 2008 W.L. 346836 (W.D. Wash. 2008), *aff'd,* 349 Fed. Appx. 245 (9th Cir. 2009) (spectator); *Duvall v. Cnty. Of Kitsop*, 260 F.3d 1124 (9th Cir. 2001) (litigant).  Plaintiffs' claims against the Indiana Judges are barred by absolute judicial immunity and summary judgment should be granted on that basis.

**5. The Division is entitled to quasi-judicial absolute immunity.**

The Division of State Court Administration, like the judicial defendants, possesses absolute immunity from suit.  Quasi-judicial immunity has been extended to officials in two circumstances.  First, quasi-judicial immunity may be extended to those individuals whose functions are comparable to those of judges in that they exercise discretionary judgment.  *Snyder v. Nolen*, 380 F.3d 279, 286 (7th Cir. 2004).  The second circumstance in which absolute judicial immunity has been extended is when the individual's functions have been undertaken pursuant to directives of a judicial officer.  *Id.* (citations omitted).  This second form of immunity applies to those who have administrative functions and operate under the direction of judicial officers.

In the present action, the Division of State Court Administration is a program operated under the umbrella and at the direction of the Indiana Supreme Court.  *See* Ind. Const. article 7, § 1.  The Division of State Court Administration exists for the purpose of assisting the Supreme Court in carrying out its duties under the Indiana Constitution.  The Division thus, to the extent it can be said to have taken any action with respect to the matters now in dispute, performed a quasi-judicial function.  Under these circumstances, the Division must be afforded absolute immunity from the allegations made against it and is, therefore entitled to absolute immunity and summary judgment.

**6. The State, the Division and the Chief Justice owed no duty to intercede on the Prakels' behalves.**

The Prakels have no claim that any particular conduct by the State, the Division or the Chief Justice caused their alleged injuries because these Defendants do not have a duty to get involved in the daily activities of the numerous trial courts in Indiana.  Likewise, the Indiana Supreme Court does not direct or manage the day-to-day operations of the lower courts.  As the Honorable John G. Baker has described on several occasions, Indiana has a multi-tiered system

of autonomous courts. *See, e.g.,* John G. Baker, *Now or Never: Reforming Indiana's Court System*, 41 Ind. L. Rev. 817, 818 (2008). The Indiana Constitution creates these tiers as separate entities, establishing a Supreme Court, the Court of Appeals, and the circuit courts, and authorizing the General Assembly to establish other courts, such as the superior courts. *See* Ind. Const. art. 7, § 1. Because the Prakels' alleged injuries stem from their claims that the Dearborn Circuit and Superior Courts should have provided a sign language interpreter to a courtroom spectator and because the State Defendants do not possess any direct oversight of the routine affairs of the Dearborn Courts, the Chief Justice, the Division and the State should never have been included as parties.

Additionally, the Indiana Rules of Trial Procedure already afford the trial courts with the authority to engage an interpreter. *See* Ind. T.R. 43(C) (providing that the trial court "may appoint an interpreter of its own selection and may fix his reasonable compensation").[10] The rule specifically instructs judges to apply the rule in compliance with the Americans with Disabilities Act. Ind. T.R. 43(C). However, this rule does not provide the Prakels with a separate basis for holding the State Defendants liable. "A person aggrieved by the application of a legal rule does not sue the rule maker. He sues the persons whose acts hurt him." *See Quinones v. City of Evanston*, 58 F.3d 275, 277 (7th Cir. 1995). If the Prakels were injured by the Dearborn Courts' alleged failure to provide an interpreter and because they used their own funds for an interpreter, the Supreme Court, the Division and the State were not the cause of their injury. The National Association for the Deaf's act of sending a letter to the Supreme Court does not suffice to impose liability on the Chief Justice or the Court.

---

[10] Under the Federal Rules of Procedure, a court may also appoint an interpreter of its choosing and "fix reasonable compensation *to be paid from funds provided by law or by one or more of the parties; and tax the compensation as costs*." Fed. R. Civ. P. 43(d) (emphasis added).

The General Assembly established the Division as an agency of the Supreme Court,  Ind. Code § 34-24-6-1.  However, none of its enumerated duties nor any other statute imposes a duty or allows the Division to finance a private individual's needs.  Ind. Code § 33-24-6-3.

Similarly, the State of Indiana is a distinct entity from the trial courts.  Although the Indiana legislature sets judicial salaries, which are largely paid from State funds, county governments fund the actual operations of the trial courts.  Ind. Code § 33-33-82-29.  Neither the administrative branch of the State nor the legislature can intrude on trial court functions.  Ind. Const. Art. 3, § 1 (establishing the state's separation of powers doctrine); *see also State v. Monfort*, 723 N.E.2d 407, 412 (Ind. 2000) ("the legislature cannot interfere with the discharge of judicial duties, or attempt to control judicial functions, or otherwise dictate how the judiciary conducts its order of business.").  The State simply has no role in the day-to-day operations of the Indiana trial courts.

In the absence of any direct oversight over the Dearborn Courts, the Chief Justice, the State of Indiana and the Division had no right or duty to act.  The injuries the Prakels claim to have sustained are not traceable.to the conduct of the Chief Justice, State or Division

**7.  Carolyn Prakel waived any right she may have had to pursue an ADA or Rehabilitation Act claim.**

Carolyn Prakel waived any right she may have had to pursue a claim under the Americans with Disabilities Act or Section 504 of the Rehabilitation Act of 1973 when she assented, through her counsel and without her objection, to participating in court proceedings without a sign interpreter present.  Carolyn Prakel was present in court on several occasions when her attorney, Timothy Day, indicated that the Court did not need to provide an interpreter for Steven Prakel.  Through her attorney and tacitly through her silence, Carolyn Prakel waived any claim or right she might have had with respect to provision of a sign interpreter to Steven.

21

Parties may waive federal remedial rights including claims under the ADA if the waiver is knowing and voluntary under the totality of the circumstances. *See, e.g., Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 52, n. 15 (1974). *See also Holmes v. SW. Reg'l Med. Ctr., Inc.*, 2012 WL 4473085 (N.D. Okla. Sept. 26, 2012). If a waiver is knowing and voluntary, the waiver will be enforced absent a showing of fraud, duress, lack of consideration, or mutual mistake. *Holmes v. Sw. Reg'l Med. Ctr., Inc.*, 2012 WL 4473085 (N.D. Okla. Sept. 26, 2012), (citing *Reed v. Nellcor Puritan Bennett,* 244 F. Supp. 1205, 1211 (D. Kan. 2003)). For example, in an ADA Title II case, a court held that a person could not assent to proceed with judicial proceedings without an accommodation but then sue for denial of that accommodation. *Tucker v. Hardin Cnty.*, 448 F. Supp. 2d 901 (W.D. Tenn. 2006) *aff'd sub nom. Tucker v. Tennessee*, 539 F.3d 526 (6th Cir. 2008).

Here, Carolyn Prakel knowingly waived her rights to pursue claims under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973 when her representative, without any objection from her, stated on her behalf that no interpreter was needed for Steven Prakel. She cannot now claim injury due to a condition to which she assented and created.

### 8.  Carolyn Prakel's claim is barred by principles of judicial estoppel.

Carolyn Prakel's claims under the ADA and Section 504 are barred by principles of judicial estoppel. She should not and cannot be permitted to assent to going forward without a court-appointed interpreter in the underlying proceedings and then claim that the failure to provide an interpreter in those proceedings violated her rights under the ADA and the Rehabilitation Act. Carolyn Prakel, through her attorney who spoke in her presence, indicated that Steven Prakel's participation was not needed in the underlying proceedings and that a sign interpreter was not necessary. In spite of that agreement, she now claims that the Courts should have provided interpreters for her son.

Judicial estoppel is an equitable concept which provides that a party cannot prevail on one ground in a lawsuit and turn around and repudiate that ground in a subsequent lawsuit. *Ogden Martin Sys. of Indianapolis, Inc. v. Whiting Corp.*, 179 F.3d 523, 526-27 (7th Cir. 1999), citing *McNamara v. City of Chicago*, 138 F.3d 1219, 1225 (7th Cir.), *cert. denied,* 525 U.S. 981, 119 S. Ct. 444, 142 L.Ed.2d 398 (1998).  "Judicial estoppel serves 'to protect the courts from being manipulated by chameleonic litigants who seek to prevail, twice, on opposite theories.'" *Ogden Martin,* 179 F.3d at 526-27 quoting  *Levinson v. United States*, 969 F.2d 260, 264 (7th Cir.1992); *see also Ladd v. ITT Corp.*, 148 F.3d 753, 756 (7th Cir.1998) ("[T]he purpose of the doctrine ... is to reduce fraud in the legal process by forcing a modicum of consistency on a repeating litigant.").  In *Ogden Martin,* the Court indicated that "[a]lthough there is no precise formula guiding the application of this doctrine, we have identified certain prerequisites to its application: (1) the later position must be clearly inconsistent with the earlier position; (2) the facts at issue should be the same in both cases; and (3) the party to be estopped must have convinced the first court to adopt its position." *Supra* at 526-27.

To permit Carolyn Prakel's claim to survive would be to violate basic principles of fairness and equity.  She took the position in the underlying court proceedings about which she now complains that an interpreter for her son was not necessary.  She now takes the opposite position, in a case based upon those identical facts, claiming that the trial courts violated the ADA by not providing an interpreter for her son, even though she, through counsel, informed the courts that an interpreter was not necessary.  The equities of this situation therefore demand application of judicial estoppel to preclude her claims.

**9.   Title II of The Americans with Disabilities Act requires only that the Defendants make reasonable accommodations for the Prakels.**

Title II of The Americans with Disabilities Act (ADA) provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  One claiming that a public program or service violates the ADA must establish "(1) that he [or she] has a qualifying disability; (2) that he [or she] is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his [or her] disability."  *Frame v. City of Arlington*, 575 F.3d 432, 435 (5th Cir. 2009); *see also Wisconsin Comm'y Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 752 (7th Cir. 2006) ("Title II case law ... requires the plaintiff to show that, 'but for' his disability, he would have been able to access the services or benefits desired.")  A plaintiff may establish discrimination by presenting evidence that the defendant intentionally acted on the basis of the disability, the defendant refused to provide a reasonable modification, or the defendant's denial of benefits disproportionately impacts disabled people.  *Culvahouse v. City of LaPorte*, 679 F. Supp. 2d 931, 937 (N.D. Ind. 2009), *citing Washington v. Ind. High Sch. Athletic Assoc., Inc.*, 181 F.3d 840, 847 (7th Cir.1999).

The United States Supreme Court in *Alexander v. Choate,* 469 U.S. 287, 105 S. Ct. 712 (1985), considered a case brought under Section 504 of the Federal Rehabilitation Act ("FRA") which has been interpreted similarly to the ADA.  The court recognized that some balancing analysis may be necessary in addressing disparate impact cases.  The Court stated that there should be a balance between the statutory rights of the disabled to be integrated into society and the legitimate interests of federal grantees in preserving the integrity of their programs.  469 U.S.

24

at 290-291, 105 S. Ct. at 715.  Thus, any right to accommodations is not absolute, but rather involves a balancing of interests.

Despite the fact that the ADA does not define "services, programs, or activities", courts have adopted the definition of "programs or activities" from the Rehabilitation Act to include, "all of the operations of ... a local government."  *Frame v. City of Arlington*, 657 F.3d 215, 225 (5th Cir. 2011) *cert. denied*, 132 S. Ct. 1561, (2012).  In *Shotz v. Cates*, 256 F.3d 1077, 1080 (11th Cir. 2001), the Court found a trial to be a service, program, or activity within the meaning of § 12132.  In *Shotz*, the Court did not explicitly say whether spectators were excluded from participation or denied the benefits of the services of the county court.  However, in *Memmer v. Marin Cnty. Courts,* 169 F.3d 630, 632 (9th Cir. 1999), the District Court dismissed an ADA claim by an interpreter concluding he did not have standing.  In *Memmer*, the Court held the plaintiff was not damaged by his inability to participate in pretrial proceedings.  *Id.* at 633.  This decision at least implies that the trial was not a program, activity or service with respect to the interpreter who would be analogous to a spectator.

In support of their claim that a spectator is a participant and that court proceedings are a program, service or activity, Plaintiffs cite to a Washington District Court opinion which they claim holds that the court had an obligation to make a reasonable accommodation for a deaf spectator.  *Rafford v. Snohomish Cnty.*, C07-0947RSL, 2008 WL 346386 (W.D. Wash. 2008) *aff'd in part*, 349 F. App'x 245 (9th Cir. 2009).  However, as discussed below, that was not at all the holding of the Court.

Title II does not require States to employ any and all means to make judicial services accessible to persons with disabilities and it does not require States to compromise their essential eligibility criteria for public programs.  *Tennessee v. Lane*, 541 U.S. 509, 531-32 (2004).  It

requires only "reasonable modifications" that would not fundamentally alter the nature of the service provided, and only when the individual seeking modification is otherwise eligible for the service. *Id.*

Title II of the ADA imposes an affirmative obligation on public entities to make their programs accessible to qualified individuals with disabilities, except where compliance would result in a fundamental alteration of services or impose an undue burden.   Americans with Disabilities Act of 1990, § 202, 42 U.S.C. § 12132.  A defendant may put forth a "fundamental alteration" defense, which requires the court to weigh and to balance the following factors after a fact-intensive inquiry: (1) the resources available to a state; (2) the range of services a state provides; and (3) a state's obligation to mete out those services equitably. *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 597 (1999); *Townsend v. Quasim*, 328 F.3d 511, 520 (9th Cir.2003); *Martin v. Taft*, 222 F.Supp.2d 940, 986 (S.D. Ohio 2002).  The State Defendants have not claimed undue burden or fundamental alteration as defenses in the present action for the simple reason that the present action involves only two courts and one spectator who seeks damages of about three hundred dollars for an interpreter for which Ms. Prakel paid.  Under different facts or with different claims, the situation would be quite different with respect to undue burden and fundamental alteration arguments.

The ADA "does not require a public entity to provide to individuals with disabilities personal devices, such as wheelchairs; individually prescribed devices, such as prescription eyeglasses or hearing aids; readers for personal use or study; or services of a personal nature including assistance in eating, toileting, or dressing."  28 C.F.R. § 35.135.  Consistent with the exclusion of other personal aids, the Courts should not be required to provide a sign interpreter to a spectator.  There must be some practical limits to accommodations.  For example, under

Plaintiffs' logic, courts would be required to provide a reader or other person to describe documents, exhibits and the demeanor of witnesses for a blind spectator.

Similarly, the ADA does not require the court to provide Steven Prakel with an interpreter. First, county court resources are limited because they are funded by the counties themselves. Although the court provides *participants* in the litigation with interpreters, it should not be required to provide spectators with an interpreter. This type of requirement would place an undue burden on the court system and put a strain on already limited court resources. Second, interpreters are provided to participants in litigation to ensure equal access to the courts. Interpreters are not merely a convenience for litigants, but essential to their ability to participate in the litigation process. While participation in a trial may constitute a program service or activity with respect to a litigant, the same analysis does not apply in the case of spectators. Unlike litigants, spectators do not participate in the litigation process and therefore are not denied access to the justice system when they are not provided with an interpreter. Third, limiting the provision of interpreters to participants in litigation is a reasonable restriction to conserve limited court resources. This sensible restriction clearly delineates who is and who is not entitled to an interpreter, while prioritizing the use of scarce court resources for individuals who require an interpreter to participate in the justice system. The ADA does not require that the Defendants provide spectators with an interpreter, because doing so would improperly and unnecessarily consume limited court resources and is not required.

**10. The Federal Rehabilitation Act, § 504**

Section 504 of the federal Rehabilitation Act of 1973 provides that "no otherwise qualified handicapped individual in the United States, as defined in section 7(6), shall, solely by reason of his handicap, be excluded from participation in, be denied the benefits of, or be

subjected to discrimination under any program or activity receiving Federal financial assistance."
Section 7(6) states that "The term "handicapped individual" means any individual who (A) has a physical or mental disability which for such individual constitutes or results in a substantial handicap to employment and (B) can reasonably be expected to benefit in terms of employability from vocational rehabilitation services provided pursuant to titles I and III of this Act."

Federal agencies that provide federal financial assistance generally have section 504 regulations covering entities that receive federal aid.  Requirements common to these regulations include reasonable accommodation for employees with disabilities; program accessibility; effective communication; and, accessible new construction and alterations.  *See generally,* www.ADA.gov (last viewed Nov. 20, 2013).

As noted in the preceding section of this brief, the United States Supreme Court considered Section 504 in *Alexander v. Choate,* 469 U.S. 287, 105 S. Ct. 712 (1985), and recognized that some balancing analysis may be necessary in addressing disparate impact cases. The Court stated that there should be a balance between the statutory rights of the disabled to be integrated into society and the legitimate interests of federal grantees in preserving the integrity of their programs.  469 U.S. at 290-291, 105 S. Ct. at 715.  Thus, any right to accommodations is not absolute but instead involves a balancing of interests.

To prevail on a Rehabilitation Act claim, the plaintiff "must prove four elements: "(1) that [he] is a 'handicapped individual' under the Act, (2) that [he] is 'otherwise qualified' for the [benefit] sought, (3) that [he] was [discriminated against] solely by reason of [his] handicap, and (4) that the program or activity in question receives federal financial assistance." *Maxwell v. S. Bend Work Release Ctr.,* 787 F. Supp. 2d 819, 827 (N.D. Ind. 2011), *citing Grzan v. Charter Hosp. of N.W. Ind.,* 104 F.3d 116, 119 (7th Cir.1997)

Federal courts are not subject to the ADA or the Federal Rehabilitation Act.  However, the Administrative Office of the United States Courts issued guidelines to the United States Courts concerning services to persons with communication disabilities which may be instructive here.  *See*, Part H. *Guidelines for Providing Services to the Hearing- Impaired and Other Persons with Communications Disabilities*, http://www.caeb.uscourts.gov/documents/forms/ Guidelines/GL.Disa.pdf, (last visited Oct. 28, 2013).  These guidelines require federal courts to provide reasonable accommodations to persons with communication disabilities including sign language interpreters or other appropriate auxiliary aids and services to *participants* in federal court proceedings who are deaf, hearing-impaired, or have other communication disabilities.  For purposes of the guidelines, participants are defined to include *parties, attorneys, jurors and witnesses*.  Spectators are *not* included.  "Court Proceedings" are defined to include trials, hearings, ceremonies and other public programs or activities conducted by a court.

There are two interesting aspects to the Federal Court Guidelines.  First, is the exclusion of spectators from those covered.  Second, is the Courts' definition of court proceedings.  The definition appears to include only more formal activities such as trials or hearings as opposed to brief informal pretrial or other conferences between the judge and the attorneys in a given case. The Dearborn Superior Court activity relating to Carolyn Prakel was informal – pretrial conferences, entry of a guilty plea.  The 'proceedings' in that case were perfunctory rather than substantive.  Given the federal courts' definition of court proceedings, it appears unlikely that the Superior Court proceedings about which the Prakels complain would be included in that definition.  Further, and in any event, under the Federal Court Guidelines, courts are not required to provide interpreter services to spectators.

**11. To establish violations of Title II and section 504, Plaintiffs must first demonstrate that the violations were intentional -  that Defendants knew or should have known that their conduct was in violation of Title II and section 504**

As Plaintiffs correctly pointed out in their brief, in order to maintain a suit for damages, which is the only relief sought by Plaintiffs in this case, they must establish that Defendants engaged in intentional discrimination.  *See Love v. Westville Corr. Ctr.*, 103 F.3d 558, 561 (7th Cir. 1996) (stating that in the context of the Rehabilitation Act compensatory damages require intentional discrimination); *See also Phipps v. Sheriff of Cook Cnty.*, 681 F.Supp.2d 899, 917 (N.D. Ill. 2009) (stating that under Title II of the ADA "it is necessary to show intentional discrimination in order to recover compensatory damages."); *Memmer v. Marin Cnty. Courts,* 169 F.3d 630, 633 (9th Cir. 1999) (plaintiff must show intentional discrimination).

The circuit courts addressing intentional discrimination in regards to the ADA and Section 504 have stated that intent may be "inferred from a defendant's deliberate indifference to the strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights."  *Meagley v. City of Little Rock*, 639 F.3d 384, 389 (8th Cir. 2011); *Liese v. Ind. River Cnty. Hosp. Dist.*, 701 F.3d 334, 345 (11th Cir. 2012); *Duvall v. Cnty of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001); *Powers v. MJB Acquisition Corp*., 184 F.3d 1147, 1153 (10th Cir. 1999); *Bartlett v. N.Y. State Bd. of Law Examiners*, 156 F.3d 321, 331 (2d Cir. 1998), *rev'd on other grounds*, 527 U.S. 1031 (1999).  However, the deliberate indifference standard includes both an objective and subjective component: objectively, the harm must be sufficiently serious, and subjectively, the defendant "must act with a sufficiently culpable state of mind."  *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994).

Plaintiffs argue that in order to prove intentional discrimination they are only required to demonstrate that Defendants had notice of the request for auxiliary aids and that Defendants

consciously chose to disregard the requests.  The problem with Plaintiffs' offered test is that it falls short of the required showing and fails to include any subjective component.  Their formulation does not address the requirement that Defendants acted *intending* to violate Plaintiffs' federally protected rights.

First, Defendants deny that the law requires provision of an interpreter for spectators under the facts of this case.  Because there is no line of authority establishing the right for which Plaintiffs advocate, it stands to reason that Defendants could not have "intended" to violate a law or regulation that they were not aware they were violating.  While Plaintiffs need not show that Defendants acted with any "personal ill will or animosity" to Plaintiffs' needs, at a minimum they must show that Defendants were aware there was a "strong likelihood" that their conduct would result in a violation of the ADA or section 504.  *See supra Meagley*, 639 F.3d at 389 (stating that deliberate indifference requires defendants to have acted in the face of a "strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights.")

In *Meagley,* the plaintiff sued a city zoo after her scooter flipped over a bridge that was steeper than ADA guidelines.  *Id.* at 389.  The court found no intentional discrimination on the part of the zoo and pointed out "there is no evidence that the zoo knew the bridges near the Siamang Exhibit did not comply with the ADA guidelines.  Before Meagley's accident, no zoo patron had ever turned over in a scooter on that bridge."  *Id.*  In other words, the court found that the zoo's conduct, which turned out to be in violation of the ADA, was not intentional because there was simply an absence of evidence showing that the zoo was *aware* their conduct violated the ADA.

31

Similar to the situation faced in *Meagley,* here there is simply no evidence showing Defendants were aware their conduct violated the ADA or section 504.  As stated in the depositions of both Judge Cleary and Humphrey, neither Judge had ever been confronted with such a request to provide sign language interpreter services to court spectators in their tenure on the bench.  Both Judges conferred with counsel for Ms. Prakel and Judge Humphrey contacted the Division.  Neither Ms. Prakel's Counsel nor the prosecuting attorney indicated they knew of a proper response to the interpreter request and Ms. Prakel's counsel even assured both Judge Humphrey and Judge Cleary that Mr. Prakel's attendance and a sign interpreter were not necessary.

Plaintiffs' rely on a 1994 Consent Decree in *Clark v. Bridges,* Exh. H.  They claim this document put Defendants on notice that refusal to pay for an interpreter for a spectator constituted a violation of the ADA/Section 504.  However, their argument mischaracterizes the *Clark* case.  The only "notice" provided by the 1994 Consent Decree was that the *plaintiff in that matter*, who was a *party* to a civil proceeding, should have been afforded a sign interpreter.  The Decree was very narrowly circumscribed to the matter at hand and explicitly stated that "[t]he Defendants do not concede hereby than any violation of the ADA or Section 504 of the Rehabilitation Act occurred … or that Indiana law is inconsistent with the ADA or Section 504…."  Exh. H, p. 3, ¶ 12.  Accordingly, the Consent Decree provides no guidance concerning whether the ADA or Section 504 apply when a spectator in a court proceeding requests an interpreter for a pre-trial hearing.

Plaintiffs also rely on the Western District of Washington's opinion in the *Rafford* case. *Rafford v. Snohomish Cnty.*, 2008 W.L. 346836 (W.D. Wash. 2008).  The *Rafford* opinion does not bind this Court.  Plaintiffs claim that in *Rafford,* "a district court *held* that Title II applied to a

deaf spectator's request for auxiliary aids and services in the courtroom." Pl. Brief at p. 15. This claim is incorrect. The defendant in *Rafford* did not contest whether attending a trial constituted a "service, program or activity." According to the Court, "plaintiff alleges, and defendants do not contest, that attending a trial as a spectator is a service, program or activity to which the regulation applies." The Court made no finding or holding on the point because the issue was not before the Court, so anything the Court said on the issue constitutes mere dicta. In addition, the proceeding at issue in *Rafford* was a full-blown evidentiary proceeding relating to the commitment of the spectator's son as a sexually violent offender. Obviously, that proceeding was quite different from the misdemeanor proceedings which occurred in the Dearborn Superior Court No. 1.

In addition, the *Rafford* opinion recognized that the judge in that case was immune from liability based upon judicial immunity. The Court further held that the ADA and section 504 require proof of intentional discrimination by the defendants. According to the Court, "[d]eliberate indifference requires both knowledge that harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." *Id.* at 4 (quoting *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2011). The Court held that the failure to act "must be a result of conduct that is more than negligent, and involves an element of deliberateness." *Id.* In *Rafford,* the District Court concluded there was no evidence of intentional discrimination or discriminatory animus and dismissed the ADA and Section 504 claims. *Id.* Ultimately, the plaintiff in *Rafford* unsuccessfully challenged the deliberate indifference finding on appeal. *See Rafford v. Snohomish Cnty.*, 349 Fed. Appx. 245, 246-247 (9th Cir. 2009).

In the present action, Judge Cleary set a hearing on Steven Prakel's request for an interpreter. In the case of both judges, they were told by Carolyn Prakel's lawyer that a sign

interpreter was not needed.  The situations involved in the present action are the antithesis of deliberate indifference.  Both judges made inquiries about the need for a sign interpreter and were assured that none was necessary.  There is absolutely no evidence here of discriminatory animus or intentional discrimination.  Consequently, because there has been no showing of deliberate indifference and, hence, no showing of intentional discrimination, the Defendants are entitled to summary judgment on Plaintiffs' claims.

**12. Third Party Standing**

Carolyn Prakel seeks to recover as a third party to Steven Prakel's ADA claim.  Courts have allowed non-disabled plaintiffs to sue under Title II of the ADA as long as those plaintiffs allege: (1) a relationship or association with a disabled person and (2) "some specific, separate, and direct injury" that the plaintiff has suffered as a result of his association with the disabled individual. *Baaske v. City of Rolling Meadows*, 191 F. Supp. 2d 1009, 1016 (N.D. Ill. 2002), *but see Simenson v. Hoffman,* No. 95 C 1401, 1995 WL 631804 (N.D. Ill. Oct.24, 1995) (holding the father of a disabled child did not suffer a separate injury when a doctor refused to treat the disabled child and asked the family to leave the care center).  A plaintiff has third party standing to assert the claims of some other person when he can show: (1) a close relationship between himself and the injured party and (2) some obstacle to the injured party's ability to protect his own interests. *Massey v. Wheeler,* 221 F.3d 1030, 1035 (7th Cir.2000) (citing *Powers v. Ohio,* 499 U.S. 400, 411 (1991)).  Here, that would require a close relationship – here mother and son, but also an inability of Steven Prakel to protect his own interests.

In *Tucker v. Hardin Cnty.,* 448 F. Supp. 2d 901, 905 (W.D. Tenn. 2006), *aff'd sub nom, Tucker v. Tennessee,* 539 F.3d 526 (6th Cir.  2008), an interpreter could not be found and a mother had to serve as a sign interpreter for her hearing-impaired children (who were the

defendants) during a criminal court proceeding.  The defense counsel for the children opted to proceed without a court-provided interpreter and requested that the mother interpret.  The mother sued for discrimination but the Court granted summary judgment to the defendant.  The Court held that absence of interpreter for deaf detainees initial appearances in court did not deny them an equal opportunity to obtain same result as others and so did not violate Title II of the ADA where they appeared, entered pleas and received a trial date.  The Court noted there was no evidence that the outcome was any different than it would have been if there had been an interpreter.

In the present action, Steven Prakel did not have any stake in the Court proceedings other than an interest in hearing what was said.  Further, there has been no showing that Steven Prakel could not protect his own interests or needed the assistance of his mother to do so.  He was not a witness or litigant whose interests were at stake.  He was not a minor child or dependent of Ms. Prakel.  Further, there is no evidence that Carolyn Prakel had some adverse outcome because Steven Prakel did not have a sign interpreter.  Without Steven Prakel having such a stake in the proceedings, Carolyn Prakel does not have standing to pursue her claim in this case.

## V.     CONCLUSION

For those reasons discussed above, Defendants request that their Motion for Summary Judgment be granted and that final judgment be entered in favor of Defendants and against Plaintiffs on all claims in this cause.

Respectfully submitted,

GREGORY F. ZOELLER
Attorney General of Indiana
Attorney No. 1958-98

By:     /s/*Laura L. Bowker*_____
        Laura L. Bowker
        Atty. No. 11147-79
        Deputy Attorney General

## CERTIFICATE OF SERVICE

I hereby certify that on November 22, 2013, a copy of the foregoing was filed

electronically.  Notice of this filing will be sent to all parties by operation of the Court's

electronic filing system. Parties may access this filing through the Court's system.

| | |
|---|---|
| Matthew Lorch | Michael Stein |
| Lorch Law Office LLC | Mary Vargas |
| matthew@lorchlaw.com | J. Archer Miller |
| | Stein & Vargas, LLP |
| Debra Patkin | michael.stein@steinvargas.com |
| National Association for the Deaf | mary.vargas@steinvargas.com |
| Debra.Patkin@nad.org | archer.miller@steinvargas.com |

         /s/ *Laura L. Bowker*
        Laura L. Bowker
        Deputy Attorney General

OFFICE OF THE INDIANA ATTORNEY GENERAL
Indiana Government Center South, 5th Floor
302 W. Washington Street
Indianapolis, IN  46204-2770
Telephone:  (317) 232-4836
Fax:          (317) 232-7979
Email:  Laura.Bowker@atg.in.gov